ROCKY MOUNTAIN FIRE INSURANCE CO., APPELLANT, v. BELCHER, RESPONDENT.

(No. 7,216.)

(Submitted March 8, 1934. Decided March 26, 1934.)

[31 Pac. (2d) 316.]

*Messrs. Slattery & Tighe,* for Appellant, submitted a brief; *Mr. John L. Slattery* argued the cause orally.

*Messrs. Molumby, Busha & Greenan,* for Respondent, submitted a brief; *Mr. Philip G. Greenan* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff leased to defendant twenty-nine rooms used as the Carlton Hotel in a described building known as the Rainbow Theatre, in Great Falls. Twenty-two rooms were on the third floor and seven on the second. The lease was made on March 20, 1931, for a term of three years beginning March 1, 1931. The rental for the first year was to be $300 per month, and thereafter $350 per month. This action, which was commenced

on July 29, 1932, was for the recovery of $1,900 past-due rental.

The answer, as finally amended, admits all the allegations of the complaint and pleads a counterclaim. The gravamen of the counterclaim is that plaintiff agreed to furnish heat and water on the premises for defendant's use in conducting her business; that after December 1, 1931, while defendant was occupying the premises, plaintiff failed to supply the necessary heat and water for the operation of the hotel and lodging-house business; that, though defendant complained to plaintiff about the matter on numerous occasions, the condition was not remedied; that during the month of May, 1932, the hot water began to assume a vile odor and a rusty color to the extent that it was unbearable and oppressive, unfit for bathing or washing, and caused guests and tenants to complain and to vacate their rooms. The hot water was alleged to be furnished from plaintiff's hot-water boiler in the basement of the premises under the care and management of plaintiff's fireman. It is further alleged that, after defendant had lost some of her trade, plaintiff cleaned the boiler and found in it a quantity of disintegrated and rotten rice; that, after it was cleaned, the water lost its offensive odor but the rusty color remained until July 29, 1932.

Defendant alleged that before the breach of the agreement by plaintiff she had a profitable trade of transient and steady guests, but because thereof she lost her trade and the value of the use of the premises depreciated in the sum of $3,000, in which amount she alleged she was damaged.

The reply admits that plaintiff agreed to furnish the necessary heat and hot water for the premises and that they were furnished from a boiler in the basement of the premises cared for by plaintiff's employee. It denied the other allegations of the counterclaim.

The cause was tried to the court with a jury. The jury found for defendant and against plaintiff. Under the instructions given to the jury, its verdict was tantamount to a finding that defendant had been damaged to the extent of $1,900,

which offset plaintiff's demand against defendant. Judgment was entered in favor of defendant for her costs. Plaintiff's motion for a new trial was brought on for hearing and submitted to the court, but was never ruled on. The appeal is from the judgment.

The principal question presented is the sufficiency of the evidence in support of the counterclaim to warrant the verdict of the jury. At the trial, since the allegations of the complaint were admitted, defendant had the opening and closing of the case. At the close of defendant's evidence, plaintiff made a motion for nonsuit, which was denied. At the close of all the evidence it requested an instruction directing the jury to find for plaintiff in the sum of $1,900. This was also denied. Error is predicated upon the court's refusal to sustain the motions for nonsuit and for a directed verdict.

We have carefully studied the record and find that the evidence offered by defendant, if believed by the jury, was sufficient to warrant a finding that plaintiff had breached its contract with defendant in the matter of furnishing adequate heat and hot water fit for use, and to warrant submission of the case to the jury as to the amount of damages sustained by defendant because thereof. In view of the pleadings, whether the evidence was sufficient to warrant defendant in abandoning the premises because of plaintiff's breach of the contract is not involved.

We think, however, that the court erred in not granting plaintiff's motion for a new trial on the ground that the evidence is insufficient to support the verdict, which, as above stated, in effect finds that defendant was damaged in the sum of $1,900. The only evidence bearing upon the extent of the damages sustained by her is the following: Defendant herself testified that Mr. Mondale had a room on the third floor, and he said he did not have enough hot water to take a bath; that "he complained about it and he moved out. That occurred with other guests. They all complained about the hot water because we used to have lots of hot water. Some moved out and some stayed. Some complained about the heat, and the first

thing I knew they were moving in and out. Some of the guests that moved out was Mr. Mondale, and there was Bill Smart and Mr. Hennessy, a traveling man, and I guess Jack Ray from Billings. I think Mr. Hennessy is in Spokane. I had several others; I can't remember all of them. John Kline moved out and so did Mr. Coughlan. I cannot remember them all because I have a poor memory for names anyway."

Defendant also said that her income per month prior to December 1, 1931, averaged $575; that after that time it dropped to not over $200 a month. She said the vile odor in the water did not develop until about the middle of May, 1932, and that it continued until she left, and it was because of that she left the hotel. On cross-examination she testified: "I couldn't tell you anybody else besides Mondale who left the premises in December, 1931. I don't remember anybody leaving in January, 1932, because his room was not warm enough. I don't remember anyone leaving the premises in February, 1932, because his room was not warm enough. In March, 1932, any number moved out because his room was not properly heated but who they were I couldn't tell you. They moved right along. I couldn't tell you or give you the name of anybody that moved out of there in April, 1932, because his room was not properly heated. In May, of course, I didn't have to heat, and nobody moved out in May, June, July or August because his room was not properly heated. * * * I can't tell you what patrons I lost in December, 1931, on account of not having a sufficiency of hot water. I named Mr. Mondale, and Bill Smart didn't get any hot water, and there were several others. Mr. Murphy moved out because there was no hot water. Mr. Smart is an elevator man. I don't know where he lives now, and I don't know where he moved to. He had been there from the fall of the year. He moved in I think it was—I don't remember exactly but he was there some time. I don't know whether he moved out of the city or not. I don't remember when he commenced to room at the hotel, and I don't remember what day he moved out; it was long after Christmas. He moved out on account of the hot water. He

moved out some time after December; how long after I don't remember. I don't know of anybody else who moved out on account of having an insufficiency of hot water." She said that in September, 1931, she lowered the room rent except the transient rates, by $5 per month. This she did not claim was due to any fault of plaintiff. On redirect examination she testified that she did not produce her records which she kept; she said they were taken and held by the sheriff.

John Kline said he moved into the Carlton Hotel in February, 1932, and left on July 21; that after May 1 the water was rusty and colored and had a bad odor. He said, "I really moved out on account of the water." At the time of the trial he was living at the Rolland Apartments, conducted by defendant.

The foregoing is all the evidence bearing upon the question of the damages sustained by defendant. The question, then, is, Was the evidence sufficient to justify a finding that defendant had been damaged to the extent of $1,900 because of plaintiff's breach of its contract to furnish sufficient heat and water? If not, the motion for new trial should have been sustained.

Defendant testified that Mr. Mondale left after complaining about the heat. She named five others who left, but did not show that they left because of a lack of sufficient heat. None of the witnesses who testified for defendant complained of the lack of heat. Their complaint was regarding the hot water. The difficulty regarding its odor and color as admitted by all of them did not commence until in May, 1932. Defendant named only six guests who moved out because of the condition of the hot water. She said, "I can't remember them all because I have a poor memory for names." There was no evidence showing what any of these had been paying as rent. Her books and records, which were available, were not produced to show how many guests actually left the place during the period in question. She said that her monthly income prior to December, 1931, was about $575 per month and that it dropped to $200 per month. She did not show how much of

this loss was attributable to the failure of plaintiff to furnish adequate heat and hot water fit for use. She did not show at what point of time her income had been reduced to $200 per month. Whether defendant was operating the hotel at a profit or at a loss when receiving an income of $575 per month the record does not reveal. The burden of proof rested with defendant.

Under our statutes "no damages can be recovered for a ▋ breach of contract which are not clearly ascertainable in both their nature and origin." (Sec. 8668, Rev. Codes 1921.)

The case of *Wallace* v. *Wallace*, 85 Mont. 492, 279 Pac. 374, 66 A. L. R. 587, is relied upon by defendant as denying the right of this court to interfere with the verdict; but that was an action for damages for alienating affections wherein the verdict is in the nature of punishment, and of necessity the jury is permitted a wide latitude. She also relies upon the case of *Wellington* v. *Spencer*, 37 Okl. 461, 132 Pac. 675, 46 L. R. A. (n. s.) 469, cited in *Quong* v. *McEvoy*, 70 Mont. 99, 224 Pac. 266, as sustaining her right to recover as damages loss of profits. That case, as well as *Blaustein* v. *Pincus*, 47 Mont. 202, 131 Pac. 1064, Ann. Cas. 1915C, 405, cited and relied upon by defendant, and the late case of *Herzog* v. *Texas Co.*, 88 Mont. 580, 294 Pac. 962, sustain the admissibility of evidence of loss of profits where there was a closing of the premises and destruction of business; but here there was no proof offered of any profits from defendant's business either before or after December, 1931. The proof consisted only of her gross income. Conceding that defendant lost some trade as a result of plaintiff's breach of the contract, there is no data furnished from which it can be ascertained that such loss amounted to anywhere near $1,900.

Here, defendant's allegation with respect to damages is as follows: "That before plaintiff violated said agreement as heretofore alleged, defendant had a profitable trade composed of both transient and steady guests and she was able to perform all of the covenants of said agreement to be performed by her,

but because of plaintiff's failure to abide by its agreement as heretofore alleged, this defendant lost said trade and the value of the use of said premises depreciated in the sum of three thousand dollars ($3,000.00), in which sum this defendant has been damaged.''

Depreciation in the value of the use of the premises was the proper measure of damages. (*Yakima Lodge No. 53* v. *Schneider,* 173 Wash. 639, 24 Pac. (2d) 103; 36 C. J. 41; *Steinhaus* v. *Schechter,* (Sup.) 172 N. Y. Supp. 699.) But defendant offered no proof of the value of the use of the premises after the acts of plaintiff complained of. There is some proof that the value of their use had decreased about $375 per month; but how much of this decrease was due to plaintiff's acts or over what period of time the reduced rental extended does not appear. Defendant was, of course, entitled to recover damages for the loss of trade, if any, proximately caused by plaintiff's acts during the time she occupied the premises (*McDuffee* v. *Colwell,* 207 Mich. 154, 173 N. W. 355; *Coleman Construction Co.* v. *Boomgaarden,* (Sup.) 170 N. Y. Supp. 25) if shown with a reasonable degree of certainty. (*Schermerhorn* v. *Sayles,* 123 Wash. 139, 212 Pac. 156; *Brewington* v. *Loughran,* 183 N. C. 558, 112 S. E. 257, 28 A. L. R. 1543; *Weichers* v. *Dehail,* 41 Cal. App. 547, 183 Pac. 187; *Graham Hotel Co.* v. *Garrett,* (Tex. Civ. App.) 33 S. W. (2d) 522.) But there is no proof warranting a verdict approaching the sum of $1,900 on this account.

Other questions require no consideration, since it is not certain they will arise upon another trial. The court erred in not granting plaintiff's motion for a new trial.

The judgment is reversed and the cause remanded for a new trial.

Mr. Chief Justice Callaway and Associate Justices Matthews, Stewart and Anderson concur.