SEARS, Respondent, *v.* BARKER et al., Appellants.
No. 9091.
Submitted January 14, 1952. Decided April 17, 1952.
Rehearing Denied June 2, 1952.
244 Pac. (2d) 516.

Mr. Sherman W. Smith, Helena, for appellants.

Messrs. Multz & Hanley, Helena, for appellant, on petition for rehearing only.

Mr. Wesley Castles and Mr. Charles Luedke, Missoula, for respondent.

Mr. Smith, Mr. Castles and Mr. Charles Luedke argued orally.

MR. JUSTICE METCALF:

On July 13, 1950, H. H. Barker and his wife Marion M. Barker, defendants herein, secured a judgment against Clarence A. Monaco and Francis C. Monaco. The judgment confirmed the Barker's ownership of the Western Star Bar in St. Regis and placed the Barkers in possession. Inasmuch as Mr. and Mrs. Barker were residents of Wallace, Idaho and under the Montana statutes not entitled to a license to sell beer or liquor, the court's decree provided: "It is further ordered, adjudged and decreed that the retail beer and liquor licenses mentioned herein and issued for use upon said premises be transferred to the plaintiffs (H. H. Barker and Marion M. Barker) or to such persons as may be designated by them as will meet with the approval of the Montana Liquor Control Board * * *."

On Friday, July 14, 1950, a writ of possession was issued and the Barkers, accompanied by the sheriff of Mineral county and one of his deputies, and an inspector for the Montana liquor control board, sought to take possession of the bar from the Monaco brothers. Shortly after the arrival of the party at the Western Star Bar in St. Regis the plaintiff herein, W. S. Sears,

was summoned. Sears held a mortgage in the amount of $10,500 on the bar and retail liquor licenses.

After some discussion an instrument as follows was executed:
"July 14, 1950

"H. H. Barker and Marion Barker
"Clarence A. Monaco—Francis E. Monaco
"W. E. Sears

"Because the Liquor Licenses are mortgaged to W. E. Sears, Because all parties are agreeable the Monaco's are authorized to turn over these licenses to W. E. Sears.

"It is agreed that this shall not hurt anyone's rights to appeal of the Barker-Monaco case.

> "Signed:
> "H. H. Barker
> "Marion Barker
> "Clarence Monaco
> "Francis C. Monaco
> "W. E. Sears"

The Monaco brothers assigned the licenses standing in their names to Sears. Then Sears prepared and signed applications to the Montana liquor control board for the transfer of the liquor and beer licenses to him. Also Sears as mortgagee of the licenses signed the following instrument:

"Montana Liquor Control Board
"St. Regis, Montana, 7-14-195—
"Montana Liquor Control Board
"Helena, Montana
"Dear Sirs:

"I, W. E. Sears, of St. Regis, Mont., the mortgagee of Liquor License No. 301 and Beer License 301—made to Francis and Clarence Monaco, do hereby give you the authority to transfer the above license as per attached transfer.

"W. E. Sears"

Finally there was prepared and signed the following agreement which will hereafter be referred to as the "lease":

"St. Regis, Montana, 7-14-1950

"Agreement

"I, H. H. Barker, hereby lease the bar room in the Western Bar and Cafe Building, situated in St. Regis, Montana, for the sum of $50.00 (Fifty Dollars) per month, until July 1, 1951— to W. E. Sears of St. Regis, Mont. In case of a sale of the Western Bar and Cafe Building and property, this agreement may be terminated.

"H. H. Barker"

All of the above documents were delivered to the inspector for the Montana liquor control board for transmission to the board in Helena.

The following Monday, July 17, 1950, Sears with his attorney and H. H. Barker went to the office of Walter H. Murphy, attorney at law, in Superior, Montana. Barker testified that the purpose of the visit was "to get an agreement drawed up." Sears testified that they went to Murphy's office for the purpose of arranging for the purchase of a stove, meat slicer and other equipment.

Barker testified that he was not aware that Sears held a mortgage on the licenses and when he learned of it from Murphy on the 17th of July, he had Murphy revoke the contract and notify the Montana liquor control board not to transfer the licenses. On July 29th Barker purported to lease the premises to defendant Delaney for $250 and attempted to have the liquor and beer licenses transferred to Delaney. The Montana liquor control board refused to issue the licenses to anyone pending a determination of the rights of the parties.

Thereupon, on October 26, 1950, Sears instituted this action, alleging that the above quoted instruments constituted a lease of the premises and a transfer of the licenses. His prayer for relief requested that title to the liquor and beer licenses be quieted in him; that he have specific performance of the lease agreement; that he be granted possession of the premises and awarded damages for the withholding of possession by defendant. The court made findings of fact and conclusions of law in favor

of the plaintiff and on March 12, 1951, judgment was entered ordering the defendants to deliver possession of the bar to the plaintiff "in conformance with the lease therefor existing between the parties" and decreeing that the plaintiff was the lawful owner of the beer and liquor licenses. The plaintiff was also awarded damages in the amount of $2500. From this judgment the defendants have appealed.

The sole question urged by the appellants is the validity of the instrument designated as the lease. It is urged (1) that this instrument is only an agreement to enter into a lease; (2) that its terms are too vague, indefinite and uncertain to be specifically enforced; (3) that it is lacking in mutuality; and (4) that there was no consideration for it.

On July 14th the various parties were attempting to work out an arrangement for their mutual benefit. In determining the effect of what took place all the instruments that were executed on that day have to be considered together. Plaintiff Sears was not a party to the action between the Barkers and the Monaco brothers. Yet as the mortgagee of the liquor and beer licenses he had an interest. On the other hand, the Barkers had been awarded by court decree title to licenses they could not lawfully hold. Hence the instrument nominating Sears as the person to take the licenses was executed. This instrument recited that "Because all parties are agreeable the Monacos are authorized to turn over these licenses to W. E. Sears". This instrument was signed by Mr. and Mrs. Barker, both Monaco brothers and Sears.

At this time the term of the lease has expired. However, there is still the question of the ownership of the liquor licenses and the damages for withholding possession. The validity of the lease becomes important because, in the language of counsel, "liquor licenses are cemented to the premises for which they are issued." State ex rel. Jester v. Paige, 123 Mont. 301, 213 Pac. (2d) 441. It is for this reason that the lease cannot be isolated and treated as a separate instrument. All of these documents are part of one transaction. Sears who was not a party to the

suit between the Barkers and the Monacos had a claim against the Monacos' liquor and beer licenses. The Monacos' interest in these licenses was transferred by order of the court to Barker. The arrangement between the Barkers and Sears with the Monacos consenting was complete on the afternoon of July 14th. The licenses were transferred to Sears; he released his mortgage and in order to have a right of possession to the premises to comply with the statute as interpreted by this court in State ex rel. Jester v. Paige, 123 Mont. 301, 213 Pac. (2d) 441, the lease was executed. Admittedly not a model of draftsmanship this lease does name the parties, describe the premises, fix the term and set forth the monthly rental. It is definite and certain enough to be enforced. There is no evidence to indicate that this was a contract to make a contract except the statement made by Barker that the parties went to attorney Murphy's office to ''get an agreement drawed up.'' The trial court found that whole transaction was completed, the transfer made and the lease consummated on July 14, 1950, and there was evidence to sustain this finding.

· As for consideration, not only was there a promise to pay a monthly rental which in itself was sufficient (R. C. M. 1947, sec. 13-501), but Sears also released his mortgage on the liquor and beer licenses which was consideration. This also supplied the necessary mutuality.

The defendants object that Mrs. Barker did not sign the lease. However, here was a lease for less than a year and under the Statute of Frauds it need not have been in writing to be enforcible. There was evidence that Mrs. Barker concurred in the terms of the lease and suggested that the provision, ''In case of a sale of the Western Bar and Cafe Building and property; this agreement may be terminated.'' Further, Mrs. Barker did sign the authorization transferring the licenses to Sears, an instrument which was part of the same transaction.

Defendant B. A. Delaney's rights are only those gained from a lease executed on July 29th. He has only such rights as the Barkers had at that time. Inasmuch as they had pre-

viously executed a valid lease to Sears they had nothing to grant Delaney on July 29th. His claim is dependent on the Barkers establishing that the former lease to Sears was ineffective. Since the Barkers have failed to do that Delaney's claim also fails.

The trial court made a finding of fact as follows: "That by reason of the refusal of the defendants, H. H. Barker and Marion M. Barker, to give possession of the said premises described in said lease to the plaintiff and that by reason of their acts herein preventing the said Montana Liquor Control Board from issuing said licenses to and in the name of the said W. E. Sears, so that he could conduct the business of selling liquor as provided in said licenses, the plaintiff has been required to make one trip to Helena, appearing before the Montana Liquor Control Board and to commence an action in mandamus to compel the issuance of said licenses to him, pay witness and attorney's fees and has sustained the loss of the use of said premises and the court finds that he has proximately sustained damages in the sum of $2500.00."

Sears testified that the amount of his mortgage on the licenses was actually $1980.10 and that he would have made about $900 a month if he had been allowed to take possession of the premises and run the bar. He further showed that he was required to pay expenses for his witnesses' travel to Helena to contest a mandamus action that was instituted in the first judicial district to compel the Montana liquor control board to issue the liquor and beer licenses here in controversy to defendant Delaney.

The complaint asked for attorney's fees and the defendant objects that this award of $2500 on the part of the court must have included such attorney's fees which were not allowable in such an action as this. However, it cannot be said that the damages awarded were excessive or that they included attorney's fees. Delaney was willing to pay a rental of $250 per month for the bar so that according to defendant's own evidence Sears was damaged in excess of $2500 when it is considered

that he released a mortgage of over $1800 in order to secure a transfer of the licenses from Barker.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.