R. B. FRASER AND ROSABELLE FRASER, PLAINTIFFS AND APPELLANTS, *v.* E. C. CLARK AND EVAN OWENS, DEFENDANTS AND RESPONDENTS.

No. 9972.
Submitted March 4, 1960. Decided May 19, 1960.
352 Pac. (2d) 681.

Kurth, Connor & Jones, Lee Overfelt, Billings, Ralph J. Anderson, Helena for appellants. Ralph J. Anderson argued orally.

Howard C. Gee, Lewistown, Hall, Alexander & Kuenning, Great Falls, for respondents. Howard C. Gee and Edward C. Alexander argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on findings of fact and conclusions of law by the district court, sitting without a jury, in an action wherein the appellants sought recovery of the balance of a down payment allegedly due them upon a contract for the purchase of land, together with interest allegedly due them upon the principal amount of the purchase price of a ranch. Defendants, respondents here, denied performance by plaintiffs, appellants, and sought affirmative relief for the return of their earnest money deposit and expenditures upon a dwelling on the land and for taxes paid, less the reasonable value of their occupation of the premises, and for certain incidental damages arising out of the consumption of the pasture by appellants. The affirmative relief was based upon fraud and deceit in the inducement and failure of appellants to perform as represented.

We are first met with a motion to strike the bill of exceptions. The bill of exceptions was not presented for settlement within the time allowed by law or any valid extension of time. After several sixty-day extensions of time in addition to the time

allowed by law to prepare, serve and file a proposed bill of exceptions, on May 15, 1958, the court reporter made her further affidavit for an additional sixty days after May 19, 1958. This sixty-day extension expired on July 18, 1958. On July 14, 1958, the judge presiding ''upon Motion having been made in open court * * * and it appearing to the court that sufficient grounds exist therefor'', the plaintiffs were granted fifteen days from and after July 18.

On July 29, 1958, some eleven days after the expiration of the period covered by her affidavit of May 15, the official court reporter made her affidavit to the effect that she would be unable to complete the bill of exceptions until August 15, and requested a further order granting additional time; and upon this affidavit, an order was made on July 31, 1958, extending plaintiffs' time to August 15.

Service was made of the proposed bill on August 11. The defendants objected to any settlement of the proposed bill on the ground that it was not served and filed within the time allowed by law. The formal written objections spelled out the grounds of objection to the effect that the judge presiding in the cause lost all jurisdiction to settle any bill and jurisdiction to further extend the time after July 18, 1958, because the order made on July 14, 1958, was not supported by affidavit as required by statute and is null and void.

Thereafter, the court reporter filed her affidavit disclosing the circumstances surrounding the making of the order of July 14. The affidavit discloses on its face that the district judge had no affidavit, or equivalent, before him when the order was made. Defendant's timely objections were overruled.

On this record the motion to strike the bill of exceptions must be granted.

The applicable statute is section 93-5505, R.C.M. 1947, which provides for the initial fifteen days for the preparation and filing of a bill of exceptions and the further sixty days which may be allowed without any showing and then provides to the

effect that additional time in excess of sixty days shall not be granted "except upon affidavit showing the necessity for further time". Respondents' motion is founded upon the decision of this court in O'Donnell v. City of Butte, 72 Mont. 449, 235 P. 707. At page 452 of the official Montana report, at page 708 of 235 P. this court refers to what is now section 93-5505 and says: "The language of the section operates as a bar to the extension of time for presentation without the showing *by affidavit* of necessity for further time. The time allowed by law together with the time which could be granted by the court without the showing by affidavit, in the instant case expired on the 6th day of May, 1924. It was incumbent upon the defendant, in order to have the questions which he submits, reviewed by this court, to file with the clerk of the district court a proposed bill of exceptions on or before the 6th day of May, 1924; this the defendant failed to do. The only alternative was for the defendant to have filed in the cause and presented to the court *an affidavit showing the necessity for further time,* and in order to show that a bill of exceptions is properly settled — that is, is settled within time — where on the face of the record it appears to have been filed after the time allowed by law, without the showing by affidavit, *the bill of exceptions must affirmatively include the showing made."* · Emphasis supplied.

That compliance with the statute is jurisdictional is settled in Vicain v. City of Missoula, 107 Mont. 105, 81 P.2d 350. That rule has been repeatedly restated and reaffirmed by this court in Hutchison v. Burton, 126 Mont. 279, 290, 247 P.2d 987, 993, where this court quotes from its former decisions and holds to the effect that a bill of exceptions presented after the expiration of the time prescribed in the statute is a nullity and cannot be considered on an appeal "even when the objection is not urged, and even though counsel should, by consent or written stipulation filed in the appellate court, agree that it shall be considered".

The rule was restated in the recent case of Berg v. Fraser, 136 Mont. 525, 349 P.2d 317. And see Estate of Stephenson, 137 Mont. 184, 351 P.2d 225.

There are two decisions of this court upon which comment should be made.

The first is Atlantic-Pacific Oil Co. v. Gas Development Co., 105 Mont. 1, 69 P. 2d 750. In that case, the order of the court, extending the time beyond sixty days, recited that it was made upon the presentation of the affidavit of one of the attorneys, while the affidavit recited in the court's order was sufficient. That case cannot possibly aid the appellants here for the order of July 14 in this case does not show that the ''sufficient grounds'' were shown by an affidavit. Hence, in this case it would first be necessary to presume that there was an affidavit and upon that presumption, further presume that the affidavit was sufficient which is squarely within the prohibition against basing one presumption on another and which was discussed by Mr. Justice Morris in the Atlantic-Pacific case, supra, 105 Mont. at pages 13 and 14, 69 P.2d at page 753 as follows: ''In the O'Donnell Case there was nothing in the record to cause that presumption to arise; in other words, to apply the same rule in the O'Donnell Case, this court would have had first to presume that an affidavit seeking the order had been filed, and then base on that presumption a further inference that it was a sufficient affidavit. Under the familiar rule that a presumption cannot be based upon a presumption, this court arrived at a correct conclusion in the O'Donnell Case''.

There is no room for any presumption here because the affidavit of the court reporter shows that there was in fact no affidavit before Judge Downey on July 14.

The second case which should be noted is Erdmann v. Erdmann, 127 Mont. 252, 261 P.2d 367, where this court refused to strike a bill of exceptions after the appellant had corrected the transcript by adding a copy of the affidavit for extension of time which had been overlooked in preparing the original trans-

cript and bill·of exceptions. In other words, it was shown in the Erdmann case that a proper affidavit of necessity had been in fact filed and presented to the court at the time the presiding judge made his order extending time. Marjorie Green's affidavit, noted just above, precludes that escape here. It should be noted that the Erdmann case expressly reaffirms the rule that under section 93-5505, R.C.M. 1947, "the only way that an additional period of time can be extended is by 'affidavit showing the necessity' ''. Erdmann v. Erdmann. 127 Mont. 252, at page 254.

However, even without the bill of exceptions before us, one of the problems upon which this appeal turns is before us. In addition, because this matter had been before this court in various aspects previously (see Fraser v. Clark, 128 Mont. 160, 273 P.2d 105; State ex rel. Clark & Owens v. District Court, 128 Mont. 526, 278 P.2d 1000; State ex rel. Fraser v. District Court, 128 Mont. 625, 283 P.2d 223; Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 P.2d 981), and because the motion to strike the bill of exceptions was argued at the same time as the appeal itself, both appellants' and respondents' briefs discussing the facts and issues as if the bill of exceptions were before us, and the court being completely familiar with the entire record, we are satisfied that no injustice will occur over what may appear to be a technical ruling.

To have a complete understanding of what we consider the issue on this appeal, we shall recite the facts as they appear in the district court's findings.

Plaintiffs and defendants entered into a primary contract on December 30, 1952, wherein it was agreed plaintiffs would sell and deliver to defendants, who agreed to buy, two certain ranches in Fergus County, to wit: the "Home" or "Moulton" Ranch and the "North Pasture", including one-half of all royalties, oil and/or mineral rights in and underlying the same, owned by R. B. Fraser, together with all of plaintiffs' rights to lands allegedly leased by them, and used in connection with

the ranches. The purchase price to be $150,000. The defendants' check in the amount of $15,000 was thereupon issued and delivered to plaintiffs as a deposit and earnest money and to be held in escrow.

It was further agreed the sellers should, at their own expense, furnish purchasers an abstract of title, or in lieu thereof, and at their expense, title insurance, evidencing and guaranteeing merchantable title in the plaintiffs to the properties "free and clear of all liens and encumbrances"; that thereupon, the furnishing of abstracts, or title insurance as agreed, a contract for deed was to be then executed and held, with other legal papers in escrow; that the sum of $15,000 deposit as earnest money, and held in escrow, should be delivered to R. B. Fraser as soon as good title to the land was proven, and the balance of the down payment of $28,500, was then to be paid; and that if sellers' title was not merchantable or insurable and could not be made so within a reasonable time after written notice concerning defects in the title, then the earnest money was to be returned to the purchasers on demand and all rights of purchasers terminated.

The lands so contracted to be conveyed were not described by metes and bounds, nor accurately or legally described in the agreement, but each of the ranches was enclosed by exterior boundary fences and it was duly agreed "whatever land that is within the fences, goes", and should be conveyed, and the boundary fences, with the lands enclosed therein, were pointed out to defendants by the plaintiff, R. B. Fraser, prior to entering into the contract.

The "Moulton" ranch, as so enclosed, consisted of approximately 2,680 acres of deeded land and about 1,280 acres of leased lands; the "North Pasture" consisted of about 1,500 acres of deeded lands and about 2,200 acres of leased lands.

Plaintiff, R. B. Fraser, represented that his leased lands therein were leased from a Mr. Smith for $100 a year.

The findings of the district court further state that the plain-

tiffs did not substantially or at all, keep and perform the terms of the contract; that no monies became due or owing them by virtue thereof and that any rights or claims that they might assert to the $15,000 earnest money, were in all things nullified by the plaintiffs' failure to perform, the failure consisting particularly in that the plaintiffs did not own approximately 1,500 acres of land in the "North Pasture", but of deeded lands therein owned not in excess in the amount of 1,303 acres.

That plaintiffs did not own and have never owned, and had no interest in or to government lands or any lands in the North East Quarter of Section 3, Township 16 North, Range 22 East, Fergus County, Montana, or any interest whatever in and to the livestock reservoir or dam situate thereon, which was enclosed in and constituted a part of the "North Pasture" when the contract was entered into and which plaintiff, R. B. Fraser, stated emphatically was his property and situate upon his land; and that plaintiffs at no time tendered or attempted to deliver any conveyances, whatever, for the lands or any part thereof, or for the reservoir or dam thereon, though all were enclosed within the boundary fences.

That the plaintiffs did not have under lease in the "North Pasture" from Mr. Smith or at all, 2,200 acres; that the acreage owned by Smith enclosed therein, approximately 2,200 acres, was held by a mere exchange agreement and that the plaintiffs did not deliver or assign a valid or legal lease to defendants of the 2,200 acres and that the defendants could not obtain a lease or leases for any thereof; that plaintiffs did not lease or hold under lease in the "Home" ranch and enclosed therein 1,280 acres or any acreage therein, saving and excepting a grazing permit for 320 acres grazing district lands and no lease of private lands enclosed in and constituting a part of the "Moulton" ranch could be obtained.

That plaintiffs furnished abstracts of title for but 920 acres in the "Moulton" ranch and no abstract or title insurance for the remainder of the lands therein, approximately 1,760 acres

which were acquired by tax-title proceedings and no abstract or title insurance to said 1,760 acres was at any time furnished or tendered.

That plaintiffs did not furnish, and no abstracts of title were furnished, for any of the deeded lands in the "North Pasture", and the title insurance covering the same was not tendered to defendants until a few days before the institution of this suit and the title insurance policy was in the amount of $6,500, and that the same was wholly inadequate to protect and guarantee the title to the lands to be conveyed defendants, and that the title insurance made no provision whatever for any guarantee to defendants of any right or title or claim to half of any of the royalties, oils or minerals underlying the property.

That the plaintiffs failed to furnish any abstract of title or any title insurance whatever for and to the royalties, oil and mineral rights or any part thereof, in the "Moulton" ranch; that at all of the times material to this action, the deeded lands in the "Moulton" ranch were not free and clear of liens and/or encumbrances and at all times herein material, there was a mortgage of $10,000 upon the lands on file and of record in the office of the county clerk and recorder of Fergus County, Montana, and that the same was not satisfied or released of record and was a cloud upon the title to the lands and until satisfied or released of record, merchantable title thereto could not be obtained.

That the 1,760 acres of deeded land in the "Moulton" ranch were acquired at a tax sale from Fergus County, Montana, and the title thereto obtained by summary tax title proceedings, and it was agreed between the parties that an action to quiet title to lands would be instituted and prosecuted by plaintiffs and a decree quieting title thereto obtained, and that the action was never instituted and the title thereto is not merchantable or clear.

That plaintiffs did not surrender possession of said ranches on April 1, 1953, and failed and refused to deliver possession of

said "North Pasture" until late in the summer of 1953 and that during all of that time permitted the same to be grazed by their own livestock; that the acreage in the "North Pasture" was far short of that agreed to be sold and that plaintiffs promised to supplement and substitute other lands therefor and that this they failed to do.

That on May 23, 1953, another contract was entered into and defendants issued their check for and deposited the balance of the down payment, $28,500, the same to be delivered to plaintiffs and paid upon the express condition that the contract would be fully performed; that defendants thereafter frequently demanded performance and that plaintiffs failed to perform and no additional abstract of title or title insurance was furnished; that due to plaintiffs' failure to perform, the executed contract entered into May 23, 1953, never became effective and defendants demanded and plaintiffs returned to them their check for $28,500; that defendants were at all times ready, willing and able to perform the contract and acted in good faith throughout the entire transaction, but by reason of the actions of plaintiffs, as herein and hereafter set out, were unable so to do.

That defendants on March 3, 1954, having determined that plaintiffs did not intend to perform in accordance with the agreements, gave due notice in writing to the plaintiffs of their rescission of the contract and immediately thereafter vacated the lands and tendered possession thereof to the plaintiffs, offered and agreed to pay a reasonable rental for the time the ranches were occupied by them, and demanded the return and delivery to them of the escrow money of $15,000; that plaintiffs had on December 31, 1952, cashed the check for $15,000 and appropriated the money to their use and refused and neglected to deliver the sum of $15,000 or any part or portion thereof to the defendants, and they have since and still do, wrongfully retain possession of the $15,000.

That the contract was entered into upon misrepresentation by the plaintiff, R. B. Fraser, of the amount of land owned by him, the amount leased by him, and the false statement that he was the owner of all that stock reservoir or dam situated upon his land, and that it could be used in watering the "North Pasture"; and upon the further representations that he had or could have and deliver to defendants a good and merchantable title to the lands; that the same was free and clear of all encumbrances, when the fact was that there was a $10,000 mortgage as a lien upon part of the lands; and that representation that he would deliver the property on April 1, 1953; and the further misrepresentation that he had leases upon parts of the land enclosed within the fences and could deliver possession thereof to the defendants, when in truth, and in fact, the plaintiff, R. B. Fraser, knew that his representations were false and fraudulent and were made to defendants to induce them to enter into the contracts. *The court found that the contract had its inception in fraud, and that fraud, deceit, misrepresentations and failure of consideration on the part of the plaintiffs permeates the whole transaction.*

The trial court further found that the plaintiffs agreed to have the home upon the property, which was then under construction, completed and in condition to be lived in on April 1, 1953. On that date, the work on the house was not completed, and defendants to complete the same, expended the sum of $371.45 by way of permanent improvement on the premises; that defendants paid taxes on the premises in the sum of $218.82 in November 1953, *and because of the failure of plaintiffs to deliver the premises on April 1, 1953, defendants were compelled to and necessarily expended the sum of $2,200 for pasturing their livestock in the State of Nebraska; that by reason of plaintiffs grazing their cattle in the "North Pasture" until the late summer of 1953, defendants were forced to, because of the depletion of the land, expend the reasonable sum of $3,000 for hay and concentrates, and in addition defendants are entitled*

*to the return of the $15,000 earnest money deposited by them and appropriated by plaintiffs.*

That there was a complete failure of consideration for the contract; that the material allegations in defendants' answer and cross-complaint were true; that the defendants were entitled to judgment for the foregoing sums with interest from the date of rescission, to-wit, March 4, 1954, and for costs of suit necessarily expended, less the sum of $1,500 as reasonable rental for the premises during the time occupied by defendants.

The writings upon which this case is founded are set out in Fraser v. Clark & Owens, 129 Mont. 56, at pages 60 to 65, inclusive, 282 P.2d 459, and will not be repeated here.

The trial court concluded as a matter of law that the defendants have judgment for rescission and the sums of $15,000 earnest money, $371.45 expended in improving the house, $218.82 paid as taxes, and $2,200 expended for pasturage in the State of Nebraska and $3,000 for hay and concentrates necessarily expended by the defendants in feeding their livestock in Fergus County. The amount of these items to be credited with a set-off of $1,500 for the plaintiffs as reasonable rental for the premises during the time occupied by the defendants. The court also provided for interest.

It is clear to us from the judgment roll itself that the respondents were entitled to rescission of the contract and to a return of their earnest money with interest, plus taxes paid and improvements made on the Fraser property, less $1,500 determined to be the reasonable value of the occupation of the premises. The earnest money was to be turned over to Fraser only "as soon as he shows good title" and as the court found, such was never shown. The fraudulent representations found by the court, as to the reservoir and shortages of acreage, justified rescission and the relief granted.

The appellants' specifications of errors go, for the most part, to the court's findings, and need not be considered here in view of our ruling on striking the bill of exceptions. However,

appellants have specified as error the conclusions of law as to the separate amounts recited above, and *that the court erred in making and entering its judgment granting to the respondents rescission of the contract together with damages for breach thereof,* the judgment being against the law.

Based upon this assertion of error, appellants argue that rescission of a contract, and damages for breach of the very contract which was being rescinded, are incompatible and may be reviewed for the first time on appeal.

In response to these contentions, the respondents argue that the matter was not properly saved for appeal, in that it was never called to the attention of the trial court during the many maneuvers connected with the pleadings, the trial, and the exceptions to the findings, and that the appellants never at any time made any motion to compel an election of remedies although that course was clearly open to them. They also contend that even if the matter is properly reviewable, damages for fraud and deceit can be had in an action of rescission. Three of the items, the earnest money payment, the improvements on the house and payment of taxes are clearly proper. Both parties concede this, if rescission be proper as we have held. See Post et al. v. Liberty, 45 Mont. 1, 121 P. 475.

Plaintiffs started their suit at a time when defendants were beginning to learn the truth and it had become apparent that plaintiffs *could not* perform the contract. Notice of rescission and a demand for restitution were promptly made. Defendants filed their answer and cross complaint generally denying plaintiffs' right and setting up plaintiffs' breaches, fraud and deceit, both defensively and in support of their prayer for restitution. In their cross complaint they then sought relief for feeding the cattle, which the court eventually awarded.

Nowhere, in the record, does it appear that the plaintiffs tried to force an election of remedies or objected or excepted to the combination of rescission and damages for fraud. But plaintiffs

now urge that the defenses and remedies are so incompatible that the question may be raised for the first time on appeal.

Plaintiffs rely on the oft-quoted rule that one induced by fraud to enter into a contract has an election of remedies in that he may rescind the contract, or may recover damages for the fraud but cannot do both. This rule has been stated variously in Como Orchard Land Co. v. Markham, 54 Mont. 438, 442, 171 P. 274; Advance-Rumely Thresher Co. v. Terpening, 58 Mont. 507, 511, 193 P. 752; Smith v. Christie, 60 Mont. 604, 606, 201 P. 1011; Friedrichsen v. Cobb, 84 Mont. 238, 246, 275 P. 267; Beebe v. James, 91 Mont. 403, 416, 8 P.2d 803.

In the Advance-Rumely case, supra, 58 Mont. at page 510, 193 P. at page 753, this court said: ''At the opening of the defense, counsel for plaintiff moved the court to compel the defendants to elect on which of their several defenses they would rely, which motion was denied, the court stating that the ruling was 'with the understanding that there isn't any question of rescission in the case.' The court thereupon announced: 'The position of the defendants is two defenses. One is that there was no consideration at all, that the machinery was worthless; and the other is that there was a breach of warranty, and that they were entitled to recover the amount of money expended in trying to get the thing to work.'

''While it is difficult to ascertain just what position the defendants take in their nine separate defenses, it seems clear that they rely, first, on a rescission of, or the right to rescind, the contract and have the money which they had paid on the contract returned to them, by reason of the alleged failure of consideration; and, second, on their right to recover damages for a breach of warranty, and this is indicated even in the statement of the court narrowing the issues, as above quoted. This being conceded, the court should have granted the motion and compelled the defendants to elect-on which of the two defenses they would rely.

"*Although it is permissible, under our procedures, to set forth inconsistent defenses, they must not be so inconsistent as to be incompatible.* Johnson v. Butte Copper Co., 41 Mont. 158, 108 Pac. 1057, 48 L.R.A.,N.S., 938; Day v. Kelly, 50 Mont. 306, 146 Pac. 930; Chenoweth v. Great Northern Ry. Co., 50 Mont. 481, 148 Pac. 330. The buyer may affirm the contract and sue for damages for the breach of warranty, or he may rescind the contract and sue for a recovery of the money paid; but he cannot insist that the contract has been rescinded and yet recover on the contract." Emphasis supplied.

It is the statement above italicized that the plaintiffs rely most heavily on and insist that rescission and damages for fraud are *incompatible* and even if pleaded as here (without any effort to make an election of remedies), the question can be raised for the first time on appeal.

Such is not the case, and we so hold. The cases relied upon by the statement in the Advance-Rumely case are cases which base the ruling on the reason that if one allegation (or cause of action) be true, the other allegation must necessarily be false. There is nothing so incompatible to rescission arising out of contract and fraud in tort in the inducement as to render them incompatible where no effort is made to force an election of remedies as here. The rule is not of substance but of procedure.

In 120 A.L.R. 1154, 1157, an annotation appears which states in part:

"The 'tyranny of labels' and the snares of 'universals,' to which a distinguished jurist has referred, find forceful illustration in the cases dealing with the subject here under discussion. For while it seems obvious that the perpetrator of fraud should not be discharged of liability therefor without having made good the damages actually resulting from his wrongdoing, the tendency of courts and writers to generalize broadly as to the remedies available to defrauded parties has

supplied wrongdoers with the means whereby in some instances they have escaped making just amends. * * *

"It is clear, of course, that when the defrauded party rescinds and elects to take back the consideration he gave for the contract, he cannot at the same time consistently ask that the deficiency in the bargain, arising by reason of the fact that the thing contracted for does not meet the representations, be made good to him; for he has chosen to forego the bargain. *But where the fraud naturally and proximately, aside from the loss of the bargain, and notwithstanding the rescission, has inflicted damage upon him, and especially where the damage is of a character which might be regarded as within the contemplation of the wrongdoer as likely to result from his fraud, it is difficult to discover any basis for denying compensation therefor.*" Emphasis supplied.

Further on in the annotation at page 1158 appears this statement:

"The question whether in a particular case the rescission of the contract bars a recovery of damages for the fraud logically depends upon what damages are claimed. A proper denial of damages after rescission must, ordinarily, proceed upon the ground that in view of the rescission there are no damages—a circumstance which actually exists where the alleged damages consist merely of the loss of the bargain. * * *

"So, the rescinding party has been allowed to recover, as damages for the fraud, losses and expenses naturally incurred on account of the contract before the fraud was discovered."

We think the views above-quoted state the correct reasoning, and as applied to this case under the cross complaint and findings of the trial court, the damages for feeding cattle prior to discovery of the fraud are other than the mere loss of the bargain and are damages which were naturally and proximately the result of plaintiffs' fraud.

The Advance-Rumely Thresher Co. case, supra, is easily distinguishable on the facts and reasoning.

Because of what has been heretofore stated, we affirm the judgment.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR and ANGSTMAN, and THE HONORABLE SID G. STEWART, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.