J. B. CRUSE, PLAINTIFF AND RESPONDENT, *v.* ARNOLD K. CLAWSON, DEFENDANT AND APPELLANT.

No. 10040.
Submitted May 3, 1960. Decided June 3, 1960.
352 P. 2d 989.

440

H. A. Bolinger, Jr., Douglas R. Drysdale, McKinley T. Anderson, Jr., Bozeman, McKinley T. Anderson, Jr., argued orally, for appellant.

Arthur F. Thompson, Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict for wrongful constructive eviction from leased premises by the lessor landlord. The plaintiff, lessee, recovered judgment in the amount of $2,125 actual damages and $500 exemplary damages. The defendant lessor is appellant.

Plaintiff leased a cafe and kitchen from defendant for a 100-day season from May 28, 1958, agreeing to pay as rental ten percent of gross receipts weekly. The defendant was the owner and operator of a hotel facility including a cafe, cocktail lounge, bar and dance floor. The leased premises were separated from the lounge, barroom and dance floor by a partition wall, the make-up of which can best be described briefly as a separator-type partition, including an eight-foot section of a solid wall, curtains, doorway and flower planter, which was an effective barrier so far as traffic between the cafe and barroom were concerned. This separator-type partition, according to the record, prevented the necessity of the plaintiff paying a twenty percent cabaret tax. In addition it allowed a separate operation so far as minors, tourists and the like were concerned.

A short time after plaintiff began to operate the cafe, defendant discussed with plaintiff the removal of the separator-partition. Testimony of the plaintiff was that he refused to agree to the removal. Again in a few days permission was asked for by defendant. Again a refusal. As to this refusal, defendant admits. The cafe was being operated between the hours of 5:00 p m. and 2:00 a. m. daily. On June 25th, after closing hours of the cafe, and against the known wishes of plaintiff without any notice to him, the defendant deliberately tore out the separator-wall between the cafe and barroom.

At about 11:00 a.m. the same day plaintiff discovered what had been done. He closed the cafe and on June 28th served notice as follows:

"Notice Of Rescission And Termination Of Lease

"To: Arnold K. Clawson, Lessor:

"You Are Hereby Notified that the Lease on the premises described as the cafe and kitchen at the Tepee Lodge in West Yellowstone, Montana, entered into on May 21, 1955, by yourself, as Lessor, and myself, as Lessee, is hereby rescinded and terminated because of your breach of the Lease, on or about June 25, 1958, and your violation of your covenant of possession and enjoyment, by your removal of the wall separating the cafe and the bar, which deliberate action on your part has destroyed the purpose for which the Lease was made.

"You Are Further Notified that, as the result of your willful and in bad faith breach of the Lease, I have sustained considerable damage thereby, and hereby demand reimbursement.

"Dated this 28th day of June, 1958.

"/s/ J. B. Cruse Lessee
J. B. Cruse—Lessee"

On the same day, plaintiff and defendant squared their account as to the 10 percent gross rental, meals and room charges between them, the inventory of groceries was paid for by defendant, certain restaurant equipment and advertising was paid for by defendant, and the defendant returned to the plaintiff a $100 deposit on the lease.

The payments by defendant above-mentioned were in four separate checks, issued in such manner because defendant did not have funds in the bank to cover the entire amount at once. The checks had written thereon, according to each separate amount, "Satisfaction in Full for Deposit Return", "Satisfaction in full for Food & Inventory on hand June 28, 1958, at 2 p. m.", "Satisfaction in Full for Advertising Mater [sic]", "Satisfaction in Full for Equipment".

Following this, the complaint in this case was filed on August 1, 1958.

The complaint, after alleging the written lease, then alleges:

"That before the lease expired, and while the Plaintiff was in possession of the leased premises, to-wit: On or about the 25th day of June, 1958, between the hours of 2:00 o'clock A.M. and 9:00 o'clock A.M. on said date, the defendant, without the consent of the Plaintiff, in bad faith, and with intent to harass and oppress the Plaintiff, and with intent to maliciously deprive the Plaintiff of the use of the leased premises for the purpose for which said premises were leased by the Plaintiff, to-wit: the operation of a restaurant for a profit, and to evict the Plaintiff from said leased premises and by his direction and under his authority did cause to be removed from said premises the partition that separated the said leased premises from the bar at the said Tepee Lodge, thereby injuring and damaging the Plaintiff as hereinafter alleged;

"That as a direct and proximate result of the intentional and malicious acts of the Defendant as aforesaid, the available space, in said leased premises, for tables and chairs for the use of customers of the Plaintiff's restaurant business, conducted on said leased premises, was reduced greatly and the seating capacity of said restaurant was thereby cut in half; that by reason of said reduction in seating capacity, and by reason of the removal of the aforesaid partition, by the Defendant, as aforesaid, the said leased premises became merely a part of the barroom and its usefulness as a restaurant was thereby destroyed.

"That as a direct and proximate result of the intentional and malicious acts of the Defendant, as aforesaid, Plaintiff has been damaged * * *".

The relief sought was damages, compensatory and exemplary.

The answer denied generally the allegations of tort and set up two affirmative defenses, admitting the lease and the removal of the partition, but alleging in effect that the lease had been terminated, cancelled and rescinded and full settlement had.

The reply admitted the payments pleaded in the answer, but alleged them to be payments for purchases of groceries, supplies, advertising, and the return of his deposit, and denied generally any settlement for damages.

The defendant, appellant here, specifies twenty-seven alleged errors, and then groups them into two classifications:

1. Plaintiff did not have a cause of action for damages *ex delicto* after (a) serving a notice of rescission, (b) entering into an agreement terminating the lease, and (c) receiving back the consideration paid by him at the time of entering into the lease.

2. Competent evidence was not introduced to sustain either general or punitive damages.

Defendant argues that under the two classifications above, the trial court erred in: (a) not granting defendant's motion for judgment on the pleadings; (b) refusing to sustain defendant's objection to certain evidence; (c) refusing a motion for nonsuit; (d) refusing a motion for directed verdict; and (e) the giving and refusing of instructions.

The joint classification above might be framed as: Was there a rescission of the contract such as would extinguish a cause of action in tort for trespass, or, in other words, was there a rescission in its technical sense with full settlement or merely an abandonment by constructive eviction?

The trial court instructed the jury generally on what constitutes constructive eviction, then instructed as follows:

"The basis of the Plaintiff's action is constructive eviction from the cafe and kitchen of the Tepee Lodge, leased by him from the Defendant. In order for him to prove that he was constructively evicted from the leased premises it is necessary for the Plaintiff to show an act or omission of the Defendant of such character and nature as to deprive the Plaintiff of a substantial, as distinguished from an insignificant or inconsequential, portion of the leased property."

The court then instructed the jury on rescission of a contract as follows:

"You are instructed that if you find from the evidence in this case that the plaintiff intended to rescind the lease entered into by plaintiff and defendant by the notice served upon defendant, then and in that event, you must return a verdict against the plaintiff and for the defendant. * * *

"If you believe that the checks given to the plaintiff by the defendant were given and accepted in compromise and settlement of all claims of the plaintiff growing out of plaintiff's damages, if any, then your verdict must be against the plaintiff and for the defendant. * * *

"You are instructed that there is a wide difference between rescission of a contract and its mere termination or cancellation. A rescission requires mutual agreement. Mutuality as used in this instruction means, that there was a complete meeting of the minds and agreement as between the plaintiff and the defendant. * * *

"You are instructed that if you find the plaintiff and the defendant, on or about June 28, 1958, mutually rescinded and terminated the lease for the Tepee Cafe premises theretofore entered into between the parties, then the plaintiff must prove by a preponderance fo the evidence that at the time of the rescission of the lease that there was a mutual and express understanding between the plaintiff and the defendant that the plaintiff reserved his right to recover damages for any breach of the lease that occurred prior to June 28, 1958. If the plaintiff fails to prove this fact by a preponderance of the evidence, then your verdict should be for the defendant. * * *

"You are instructed that if you find from the evidence that the lease of the Tepee Cafe was rescinded, then, in that event, the measure of damages to be recovered by the plaintiff is only that consideration paid by the plaintiff under

the lease, which in this case is the $100.00 paid by the plaintiff as a deposit when the lease agreement was made, and if you find that this sum was returned to the plaintiff, the plaintiff is not entitled to recover any further damages from the defendant. * * *

"You are instructed that rescission is the unmaking of a contract requiring the same concurrence or agreement of wills as that which make the contract and nothing short of this will suffice or nothing short of this will be sufficient. In determining the question of whether or not there was a rescission of the Lease agreement in the case now before you, you must look not only to the language of the parties but to all the circumstances including the effect of a complete rescission upon the rights of those concerned, and the probability or improbability of the parties having desired to effect such a result."

As will be seen by the foregoing instructions, the court instructed on both theories raised by the pleadings. It instructed on constructive eviction and the action *ex delicto,* and then on rescission and termination of a contract and whether there was a settlement. It left the fact questions for the jury.

Without dwelling upon the evidence at length, we find substantial evidence to sustain the jury verdict as to constructive eviction. We also find substantial evidence, though conflicting, on whether there was a technical rescission and a settlement. Under such circumstances we will not disturb the verdict of the jury, if it was properly instructed.

In Clark v. American Developing & Mining Co., 28 Mont. 468, 476, 72 P. 978, 980, this court discussed rescission as follows:

"Rescission is the unmaking of a contract requiring the same concurrence of wills as that which made it, and nothing short of this will suffice. Bishop on Contracts, § 812; Robinson v. Pogue, 86 Ala. 257, 5 South. 685. There is a wide difference between the rescission of a contract and its mere

termination or cancellation. Winton v. Spring, 18 Cal. 452; Weil v. Jones, 53 Cal. 46. 'It is well settled that a technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made, so far as that is possible, and that no rights accrue to either by force of the terms of the contract. But, besides technical rescission, there is a mode of abandoning a contract as a live and enforceable obligation which still entitles the party declaring its abandonment to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment. * * * [Hayes v. City of Nashville, 80 Fed. 641.] Such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrong-doing of the other party has brought about.' Mining Co. v. Humble, 153 U.S. 540, 14 Sup.Ct. 876, 38 L.Ed. 814.

"Did the parties intend to rescind the contract, so as to place each other *in statu quo?* In determining whether such a rescission has taken place, courts look, not only to the language of the parties, but to all the circumstances, including the effect of a complete rescission upon the rights of those concerned, and the probability or improbability of their having desired to effect such a result. Hayes v. City of Nashville, 80 Fed. 641, 26 C.C.A. 59."

And, in West River Equipment Co. v. Holzworth Construction Co., 134 Mont. 582, 587, 335 P.2d 298, 301, the court said:

"However, mutual cancellation must be clearly expressed and shown, and acts and conduct of the parties to be sufficient must be clear, convincing and inconsistent with the existence of the contract." See also Polich Trading Co. v. Billings Hudson Terraplane Co., 114 Mont. 446, 137 P.2d 661; Hollingsworth v. Ruckman, 72 Mont. 147, 156, 232 P. 180; Advance-Rumely Thresher Co. v. Terpening, 58 Mont. 507,

193 P. 752, which case was recently discussed by this court in Fraser v. Clark, 137 Mont. 362, 352 P.2d 681.

From an examination of the Montana cases, we conclude that under the facts of this case, rescission became a fact question for the jury and was properly submitted to them.

As to appellant's second classification, whether there was competent evidence on general and punitive damages, we observe that most of appellant's argument is based upon the measure of damages for breach of contract under his theory of the case, and not upon a tort action which was the respondent's theory.

It is agreed by both appellant and respondent that in Montana the rule is that a person may recover for loss of profits where it is shown that such loss is the natural and direct result of the act of the defendant complained of and that such amount is certain and not speculative. See R.C.M.1947, section 17-401. The items of general damage prayed for included loss of wages sustained for one month by reason of the plaintiff giving up his job in the amount of $500. Also loss incurred for moving himself and equipment to West Yellowstone prior to opening the business in the amount of $125, and for loss of established trade and business and the loss of prospective profits in the amount of $2,000. The jury's verdict was in the amount of $2,125.

The court instructed: "You are instructed that if your verdict in this case be for the Plaintiff, that it will then become your duty to determine what, if any, damages the Plaintiff has suffered, and in assessing damages, if any, you shall take into consideration the reasonable loss of profit that Plaintiff has suffered, if any, the reasonable cost of expenses incurred by the Plaintiff, if any, in preparing to enter upon the leased premises, and in and about the leased premises the reasonable value of any wages that the Plaintiff would have earned, if any, for the period from May 25, 1958, to June 25, 1958, derived from gainful employment, if any, that the Plaintiff gave

up in reliance upon the lease, not, however, to exceed the sum of $2,625.00.''

In Jurcec v. Raznik, 104 Mont. 45, 50, 64 P.2d 1076, 1077, it was said:

''Under our statutes, 'no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.' Section 8668, Rev. Codes [1921, now R.C.M.1947, § 17-302]; Rocky Mountain Fire Ins. Co. v. Belcher, 96 Mont. 409, 31 Pac.2d 316; Brown v. Homestake Exploration Co., 98 Mont 305, 39 Pac.2d 168. Profits which are a mere matter of speculation cannot be the basis of recovery in suits for breach of contract, while profits which are reasonably certain may be. Smith v. Fergus County, 98 Mont. 377, 39 Pac.2d 193. We held in the last-cited case that prospective profits from farming operations may be ascertained with a reasonable degree of certainty; and when the evidence furnishes sufficient data to determine the value of prospective crops, they constitute a proper element of damage for breach of contract of lease; and evidence of the actual value of matured crops of like kind cultivated in the same period in the same vicinity and under substantially similar conditions, is admissible to prove such profits.

''This court has held that where an established business is wrongfully interrupted by the landlord, recovery may be had for anticipated profits based upon the profits theretofore received in the same location. Blaustein v. Pincus, 47 Mont. 202, 131 Pac. 1064, Ann.Cas. 1915C, 405.

''It is generally held that where the plaintiff was about to embark on a new business venture but was wrongfully prevented by the defendant, he can recover nothing on account of the expected profits, for there is nothing to prove that a profit would have been made.''

See also Rocky Mountain Fire Ins. Co. v. Belcher, 96 Mont. 409, 31 P.2d 316, and Sears v. Barker, 126 Mont. 101, 244 P.2d 516.

■ As to the loss of anticipated profits, it was a going business. The defendant himself testified that the cafe grossed $16,000 to $18,000 in the last six weeks he operated. The plaintiff testified to the same and that his food costs were 40 percent and rental 10 percent. The jury without undue speculation, could reasonably have found a loss of profits in the amount of $2,000.

■■ As to the punitive damages in the amount of $500, the defendant's argument is based on the premise that no constructive eviction was shown. We have already discussed that feature of the case, and it follows that where a landlord, in doing the act which constructively evicts the tenant, is motivated by a desire to vex, injure or annoy the tenant, the act is done maliciously and a jury may award punitive damages. R.C.M. 1947, §§ 17-208, 19-103, subd.(18) ; Brown v. Grenz, 127 Mont. 49, 257 P.2d 246.

Here the deliberateness of the act of removal of the partition after refusal by the tenant would clearly justify the finding of the jury.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR concur.