## CHRISTMAN CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10544.

Circuit Court of Appeals, Sixth Circuit.

March 22, 1948.

Clayton F. Jennings, of Lansing, Mich. (Clayton F. Jennings, of Lansing, Mich., and Clarence A. Bradford, of Detroit, Mich., on the brief), for petitioner.

Helen Goodner, of Washington, D. C. (Theron L. Caudle, George A. Stinson and Harry Marselli, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this petition to review is whether shares of its own stock, acquired by petitioner by purchase or in satisfaction of indebtedness of some of its shareholders, have the status of treasury stock and constitute a part of equity invested capital for the purpose of calculating income and excess profits tax under the Excess Profits Act of 1940, § 710 et seq., Int.Rev.Code, 26 U.S.C., 26. U.S.C.A. Int.Rev.Code, § 710 et seq. The Tax Court determined that equity invested capital should be reduced by $140,960, the amount paid by petitioner in reacquiring 14,096 shares of the 24,800 originally issued.

The Tax Court held § 35.718-5 of Regulations 112 applicable. It provides in part as follows: "The purchase by a corporation, of its own stock for investment does not of itself result in a reduction of invested capital. But see section 35.720-1 relative to inadmissible assets. If, however, the corporation subsequently cancels such stock,

invested capital is reduced, beginning with the day following such cancellation, by so much of the adjusted basis of such stock in the hands of the corporation as is not properly chargeable to earnings and profits of the taxable year. If stock is purchased for retirement, there is a distribution on the date of purchase of the amount paid therefor and the invested capital is reduced by the amount thereof not properly chargeable to earnings and profits of the taxable year."

The petitioner contended that it had purchased or acquired the 14,096 shares for reinvestment and that they were held as treasury stock. 5,650 of the shares in question were acquired in 1932, and 8,446 in 1939. Petitioner claimed that its contention is supported by the existence of three stock certificates aggregating 13,405 shares, which upon the stubs were denominated treasury stock.

The Tax Court found that the books of account do not show the existence of any treasury stock at any time through the taxable years, and that the petitioner has failed to prove that it reacquired the shares in question for investment, and in effect found that the shares had been acquired for retirement. It therefore excluded them from equity invested capital.

 These are findings of fact, and they are amply supported by the record. The Commissioner's determination was presumptively correct. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184. The taxpayer had the burden of proving that the determination was wrong. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. Among the circumstances which the Tax Court took into consideration in deciding that the taxpayer had not borne its burden were the following: While the petitioner claimed that 14,096 shares of its stock, acquired by it principally in satisfaction of indebtedness, constituted treasury stock throughout the taxable years, its capital stock was entered on the books at $53,520, instead of $248,000, as now claimed. The same figure was shown by the petitioner on its tax return for the taxable years, justifying an

inference that it regarded its capital stock as not including the 14,096 shares previously acquired.

As in effect found by the Tax Court, the testimony of petitioner's witnesses as to the time when the certificates claimed to be a reissue of the stock acquired by the taxpayer replaced the original certificates, is of little or no probative value. Petitioner's assistant secretary testified at first that the certificates representing the claimed reissue "were drawn back in 1939, of my own knowledge;" but later he declared that he "actually issued these new certificates after the amendment to the Articles of Incorporation which was on October 25, 1945." Later he said that he did not know how certificates No. 3 and No. 4 written in the name of The Christman Company; could have been dated July 31, 1939, before the petitioner's name was changed from The Christman-Lansing Company to The Christman Company.

The Tax Court's finding that the petitioner failed to prove that it reacquired the shares in question for investment is strongly supported by the physical state of the record. The principal certificate, No. 4, for 8,046 shares, represents stock turned over by shareholders of an Indiana corporation in settlement of a controversy which culminated in 1939. It is drawn to The Christman Company, dated July 31, 1939, executed by officers of The Christman Company, and is on a stock certificate headed "The Christman Company, Lansing, Michigan." The Christman Company was not in existence in 1939, the name of the corporation at that time being The H. G. Christman-Lansing Company. On the stub is the following notation: "Certificate No. 4 for 8046 Shares Issued to The Christman Company Reissue of No-Par Cert: No. 71 Treasury Stock." The original date given on the stub is July 31, 1939, but this date is crossed out and June 6, 1945, is written above it. The 1945 date is in the same handwriting as that which describes the stock as being a reissue and "Treasury Stock." Certificate No. 3, for 400 shares, purports to be a reissue of certificate No. 70. Each of these certificates bears the date of July 31, 1939, and each of them is drawn to The Christman Company, and ex-

ecuted by officers of The Christman Company, which was organized in 1940. The stub of certificate No. 3 bears a notation that it is a "Reissue of No-Par Cert. No. 70 Treasury Stock." The original date of July 31, 1939, on the stub, is crossed out exactly as was done in certificate No. 4, and the date of June 6, 1945, is written above. Certificate No. 9, for 4,959 shares, also denominated on the stub as treasury stock, purports to be a reissue of certificate No. 73. Certificate No. 9 bears the date of June 6, 1945, both on the stub and on the certificate. Certificate No. 73 is not given in the record. The stubs of all three of these certificates, No. 3, No. 4 and No. 9, bear the notation "Treasury Stock." Certificates No. 3 and No. 4 not only purport to have been issued in 1939, when The Christman Company, which was named as the registered owner, was not in existence, but they are appropriately filled out upon the stock certificate form of The Christman Company and executed by its officers. Certificate No. 9, in which 1945 is the date given both on the certificate and the stub, purports to be a reissue of a certificate which is not in evidence.

From an examination of these certificates it is impossible to decide whether certificate No. 4 and certificate No. 3 were made out on June 6, 1945, or on July 31, 1939; but the conclusion is unavoidable that the denomination "Treasury Stock," which is carried on the stubs of all three certificates, is in the same handwriting as the date, June 6, 1945, and that the description "Treasury Stock" was placed on the stub at about that time, that is, after this controversy had arisen and after the agent of the Treasury Department had conferred with the petitioner.

After repeated examinations of these certificates, our impression of the situation is well expressed by the judge of the Tax Court, who at the hearing said, "What am I to believe is the fact about the date of issue?" Since the alleged treasury stock may not have been issued until June, 1945, whereas the stock reacquired came into petitioner's possession partly in 1932 and partly in 1939, the Tax Court did not err in finding that petitioner established no intent to employ this stock as treasury stock or to

risk it as capital in the business, and in effect concluding that the stock had been purchased for retirement. The petitioner has not established that it bought it for reinvestment, and it follows that its value must be excluded from equity invested capital for the purpose of calculating the excess profits tax.

The decision of the Tax Court is affirmed.