ERDMANN ET AL., APPELLANTS, *v.* ERDMANN, RESPONDENT.

No. 9182

Submitted March 31, 1953. Decided July 2, 1953.

Rehearing Denied October 16, 1953.

261 Pac. (2d) 367.

Frisbee & Moore, John P. Moore, Cut Bank, for appellants.

Horace W. Judson, Cut Bank, Hall, Alexander & Burton, Edward C. Alexander, Great Falls, for respondent.

Mr. Moore and Mr. Alexander argued orally.

MR. JUSTICE ANDERSON:

This action was brought for the purpose of quieting title to

certain property in Glacier County. Herman and Marvin C. Erdmann were plaintiffs and Minnie Erdmann was defendant. The district court, sitting without a jury, heard evidence for the plaintiffs. The defendant rested without introducing any evidence. The district court found that neither of the plaintiffs were entitled to recover judgment against the defendant, and that the evidence was insufficient, and therefore dismissed the action. From this judgment plaintiffs appeal.

Respondent moves for the first time in this court to strike the bill of exceptions for the reason that it was not presented for settlement within the time allowed by law or any valid extension thereof in that the last extension was void for want of a sufficient affidavit showing the necessity therefor. Appellants then filed a motion for diminution asking that the transcript be corrected by adding a copy of the affidavit for extension of time, which affidavit had been timely filed in district court but overlooked in the preparation of the original transcript.

Counsel for the respondent contends that this court has no jurisdiction under the rule laid down in O'Donnell v. City of Butte, 72 Mont. 449, 235 Pac. 707, and further contends that nothing said on the same point in Atlantic-Pacific Oil Co. of Montana v. Gas Development Co., 105 Mont. 1, 69 Pac. (2d) 750, militates against the rule in the O'Donnell Case.

The order granting the plaintiffs additional time, in the instant case, in addition to the time theretofore allowed, reads in part as follows: ''Upon application of the plaintiffs in the above entitled cause of action, and good cause appearing therefor;

''It Is Hereby Ordered That the plaintiffs be, and they are hereby granted an additional fifteen (15) days to the time already allowed by the Court herein, for the preparation, filing and serving their Bill of Exceptions in the above-entitled matter.''

Under R. C. M. 1947, sec. 93-5505, the only way that an additional period of time can be extended is by ''affidavit showing the necessity''. When the district court, by its order,

used the term "application," it showed that the court was proceeding according to statute and acting upon a showing made. We will not presume that the lower court acted in violation of the applicable statute in the absence of a showing to the contrary. Here the showing is that an affidavit of necessity had been, in fact, timely filed in the district court. No objection was raised to the settlement of the bill of exceptions in the lower court. In the O'Donnell Case, objections were raised in the lower court and the fact there was that no affidavit had ever been filed as provided by statute.

We are inclined to encourage the hearing of cases on their merits and to discourage the disposition of cases on technical interpretations which do not affect any substantial right. The record here was sufficient for this court to assume jurisdiction and respondent's application to strike the bill of exceptions is denied.

Appellants point out that the complaint was in the usual form. First: That plaintiffs be adjudged owners of the property. Second: That the defendant be adjudged to have no right or interest in the property. Third: That defendant be forever debarred from asserting any claim in or to the property, etc.

Appellants at the trial introduced an abstract of title to the property, which abstract showed: (1) That Herman O. Erdmann and Minnie Erdmann, his wife, were granted the property on March 3, 1947; (2) that Herman O. Erdmann granted the property by quitclaim deed to Minnie Erdmann on January 7, 1948.

Appellant Herman Erdmann claims that the quitclaim deed to Minnie Erdmann, who was his wife at the time of conveyance, should have been cancelled in view of the fiduciary relationship of husband and wife, because the consideration for the conveyance was the promise of the grantee to keep the house for him and never put him out, and that the consideration failed when Minnie Erdmann rented out the premises. The evidence shows too that the parties later were divorced. The answer of respondent denies that appellant has any interest in the property and

this is tantamount to an allegation that respondent did not hold the home for him.

The record discloses that plaintiff Marvin C. Erdmann had no interest in the property in question and the dismissal of the action, as to him, was clearly right.

It can be concluded from the testimony of Herman Erdmann that part, if not most, of the money paid for the original purchase of the property was his.

A real estate agent, who apparently was the only third person familiar with the transaction, prepared the deed from Herman Erdmann to Minnie Erdmann, and there is evidence to the effect that the same real estate agent advised Herman Erdmann that he could obtain old age assistance if he deeded the property to his wife. No money was paid to Herman Erdmann at the time the deed was given and so far as the record shows the consideration for the deed is the promise of the grantee to keep the home for him.

No effort was made by plaintiffs to show whether any other ▇ consideration had, in fact, passed from the grantee to the grantor at the time the deed was made and delivered, but the fact that Herman Erdmann said he would never have signed the deed if he had known his wife would later put him out of the house is sufficient to show that that was the consideration which he thought he was to get for the deed.

Neither Minnie Erdmann nor the real estate agent were called as witnesses to refute the testimony given by Herman Erdmann.

'A credible witness is one whose statements are within reason ▇▇ and believable and the evidence of one witness is sufficient to establish a fact. Whitney v. Bertoglio Mercantile Co., 65 Mont. 358, 211 Pac. 323.

In the instant case the evidence submitted to the lower court shows that sometime after the transfer of the property was made, the usual relationship of husband and wife was no longer apparent and the relationship ended in divorce.

Herman Erdmann, who was without the benefit of education and had little, if any, understanding of a so-called quitclaim

deed, was asked at different stages of his examination the following questions and gave the following answers:

"Q. Where was the deed made out? A. At Mrs. Bloomstrom's.

"Q. Who was present at the time the deed was made out? A. Me and my wife and her.

"Q. Can you tell the court what led up to the signing of that deed? A. Yes. Well, the taxes came due and this was a joint account that she or that we had and—

"Q. Just a minute. What do you mean by a joint account? A. That property. That property we had.

"Q. You mean it stood in both of your names? A. Yes.

"Q. Go ahead. A. Well, the taxes came due and I had only $30.00—$31.00 to pay for taxes and that was about half what the taxes was and I asked her to help me for the taxes and she said, 'No.' I said, 'Minnie, we will lose the place if we can't pay the taxes—we will lose our home.' She said, 'I won't.' It kept on for awhile—two weeks—and then she said, 'If you turn it over to me, if you sign it over to me I will hold the home.' Well, I was tied, I couldn't hold it. I would like to keep the house so we went down to Mrs. Bloomstrom's and I went along and that is where we made it.

"Q. Was there any conversation at Mrs. Bloomstrom's office between you and your wife and Mrs. Bloomstrom? A. Yes. * * *

"Q. Did Mrs. Erdmann say anything to you at that time? A. Yes.

"Q. What did she say? A. She said she would hold the home. I asked her, 'Why, you can put me out.' She said, 'I will never do it.' That is what she said.

"Q. Mr. Erdmann, would you have signed the deed if you had known that your wife would later put you out of the house? A. No."

In the case of De Atley v. Streit, 81 Mont. 382, 263 Pac. 967, 969, this court said: "Examination of a large number of cases discloses that the courts in this country, with a few exceptions, regard contracts of the character set out in the complaint, en-

tered into between parties who occupy fiduciary relations toward each other, such as *husband and wife* or parent and child, in which the grantee agrees to furnish maintenance and support to the grantor as the consideration for the conveyance of all or a major portion of his property, as being in a class by themselves.'' Emphasis ours.

Generally speaking, the cases have arisen where elderly people have turned over their property in consideration of support and maintenance during the remainder of their lives. However, the underlying reasons for the relief granted in those cases are basically the same as in the instant case.

In the granting of a deed by a husband, well along in years, ▬ to his wife, for a consideration as herein set out, there is a confidence reposed by one toward the other, sacred in its nature, a breach of which no court should tolerate upon technical rules. Transactions of this kind are classed by themselves and enforced without reference to the writing by which they are expressed. De Atley v. Streit, supra.

A court of equity will closely scrutinize all transactions be- ▬ tween a husband and wife to the end that injustice and oppression may not result. 41 C. J. S., Husband & Wife, sec. 120, page 594.

In the instant case the plaintiff Herman Erdmann attempted to explain that his marriage, after 43 or 44 years, reached a point where it was not going so good and was stopped by the court. ''Q. How long ago, if you know, was that relationship changed? A. Well, it ain't been going so good for the last—The Court: No, No!'' Herman Erdmann was asked the following question: ''Q. What was your understanding when you signed this deed?'' The lower court refused the plaintiff the right to answer the question.

It is the judgment of this court that the district judge did ▬ not allow the plaintiff Herman Erdmann the latitude of explanation required in equity cases and thereby failed to scrutinize all the transactions prior to and after the deed was made. The relationship of husband and wife is regarded as of a con-

fidential nature. If there is any misrepresentation or any concealment of material facts, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void and as far as possible restore the parties to their original rights. 26 Am. Jur., Husband & Wife, sec. 268, p. 876.

We are not satisfied that the plaintiff Herman Erdmann made out a prima facie case in the record presented here, but because of the limits of inquiry placed upon him and his counsel by the district judge, there is grave doubt that substantial justice will result from the judgment of the court below. Counsel for the plaintiff, at the close of his case, pointed out: "We once again are attempting to get this evidence in to show the intention at the time of the execution of the deed."

Under the powers and duties of this court as prescribed by R. C. M. 1947, sec. 93-216, the judgment of the lower court is reversed with directions that further proceedings be had which are consistent with this opinion.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.