**Betty Bell HUELSMAN, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 19077.**

United States Court of Appeals
Sixth Circuit.

Oct. 3, 1969.

478

McCree, Circuit Judge, dissented.

Henry J. Burt, Jr., Louisville, Ky., for petitioner.

Paul M. Ginsburg, Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before McCREE and COMBS, Circuit Judges, and HOGAN, District Judge.*

COMBS, Circuit Judge.

This appeal presents a petition to review a decision of the Tax Court holding petitioner, Betty Bell Huelsman, liable for $25,189.67 in income tax deficiencies for the years 1963–1965. The deficiencies arose out of the Commissioner's determination that income had been fraudulently omitted by the husband from joint income tax returns filed by petitioner and her then husband for those years. It was conceded before the Tax Court that petitioner was not subject to fraud penalties of $12,594.84 originally assessed against her pursuant to 26 U.S.C. § 6653(d).

During most of their married years, 1951–1965, Betty Bell Huelsman and Alfred J. Huelsman filed joint income tax returns. For the years 1963–1965, the joint returns filed by them failed to report income in the form of funds illegally obtained by Alfred J. Huelsman from his business associates. His activities in obtaining these funds led to his conviction in November, 1965, in a Kentucky state court upon an indictment charging that he had obtained substantial sums of money under false pretenses. Shortly thereafter, petitioner filed suit for divorce which was granted in February, 1967.

The Tax Court found that petitioner took no part in and had no knowledge of her former husband's criminal actions. She obtained no benefit, directly or indirectly, from the illegally obtained funds. Her standard of living was not changed in any way. Nevertheless, by virtue of 26 U.S.C. § 6013(d) (3), petitioner was held liable for income tax on the funds illegally obtained by her former husband. Implicit in the Tax Court's ruling is the legal fiction that embezzled money is income to the wrongful taker. This was held by a divided Court in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). It is interesting background, although perhaps not legally significant here, that the Court in *James* overruled Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), which had held that embezzled money was not in-

* Honorable Timothy S. Hogan, United States District Judge for the Southern District of Ohio, sitting by designation.

come to the embezzler because title remained in the rightful owner. We have found no Supreme Court case on the specific question whether money embezzled by one spouse will be considered as income to the innocent spouse who has signed a joint tax return.

Section 6013(d) (3) provides that if a joint return is filed "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." It has been held by this and other circuits that, under this section, a wife's joint and several liability arising out of the filing of a fraudulent joint return may remain despite the fact that she had no knowledge of the unreported income which gave rise to the liability. See Horn v. Commissioner of Internal Revenue, 387 F.2d 621 (5th Cir. 1967); Moore v. United States, 360 F.2d 353 (4th Cir. 1966); Spanos v. United States, 323 F. 2d 108 (4th Cir. 1963); Cirillo v. Commissioner of Internal Revenue, 314 F.2d 478 (3rd Cir. 1963); Furnish v. Commissioner of Internal Revenue, 262 F.2d 727 (9th Cir. 1958); Howell v. Commissioner of Internal Revenue, 175 F.2d 240 (6th Cir. 1949). However, under certain circumstances, a wife may avoid such liability even though a joint return has been filed. For example, where a wife's signature to a joint return is procured by duress, that defense may be validly interposed to avoid the liability created by Section 6013(d) (3). Furnish v. Commissioner of Internal Revenue, *supra.* In addition, the liability imposed by Section 6013(d) (3) is not binding on a spouse who mistakenly signs a joint return since, in that case, the necessary intent to file such a return is not present. Payne v. United States, 247 F.2d 481 (8th Cir. 1957). The Tax Court has also intimated that, in certain other narrowly defined situations, a victimized spouse will be absolved of paying the tax. It was said in Scudder v. Commissioner of Internal Revenue, 48 T.C. 36, 40 (1967), that "although we agree that fraud may void a person's signature for purposes of liability on a purported joint return,

\* \* \* the signature must be the product of fraud." In Davenport v. Commissioner of Internal Revenue, 48 T.C. 921 (1967), the Tax Court observed that the evidence there did not show that the wife's signature was the product of "duress or that it was forged or was obtained by trickery, nor \* \* \* any deliberate deception by the husband to induce his wife to sign a joint return with him." See also Stanley v. Commissioner of Internal Revenue, 45 T.C. 555 (1966); Federbush v. Commissioner of Internal Revenue, 34 T.C. 740 (1960); Aylesworth v. Commissioner of Internal Revenue, 24 T.C. 134 (1955).

Whether any of these several defenses will exonerate an innocent spouse from liability under Section 6013(d) (3) in a particular case necessarily depends upon all the circumstances leading up to and surrounding the signing of the joint return. Here, although the Tax Court's memorandum opinion states, without elaboration, that petitioner signed the returns voluntarily, a careful examination of the record reveals that evidence as to the conditions existing when these returns were signed, so crucial to the determination of liability under Section 6013(d) (3), was not developed before the Tax Court.

The Tax Court had before it only an abbreviated stipulation and answers by petitioner to a few perfunctory questions propounded to her on the witness stand. The stipulation merely recited that petitioner had filed joint returns with her then husband for the years in question; that her husband had been convicted of obtaining money under false pretenses; that she was not a party to the criminal actions of her husband; and that she had obtained a divorce from him in 1967.

In her brief appearance on the witness stand, petitioner added very little to the stipulation. She reiterated her lack of knowledge of her husband's criminal activities; testified that she had custody of her fifteen-year-old son, that she is unemployed, and last worked as an office

clerk at $2.00 an hour. She admitted on cross-examination that she had signed the joint returns, and to the specific question, "Those are not forged, that is a voluntary signature by you?" she answered, "Yes, sir, that's right."

Copies of the indictments filed with the stipulation reveal that Alfred J. Huelsman was charged with obtaining under false pretenses a little more than $100,000. Copy of the judgment of conviction shows that he pleaded guilty, was sentenced to a year in jail, and sentence was suspended on condition that he make restitution and remain on good behavior for five years. The present whereabouts of Alfred J. Huelsman is not revealed by the record and we can only infer that the Government's tax claim can not be collected from him.

The Tax Court held that its hands were tied by the statute and by its decision in Scudder v. Commissioner of Internal Revenue, 48 T.C. 36 (1967). It said in its opinion:

"We have no equitable power to grant relief to petitioner, however distasteful the result herein may appear. De La Garza, 46 T.C. 446 (1966), affirmed per curiam 378 F.2d 32 (C.A. 5, 1967). All we can do is emphasize what we said in Scudder, 48 T.C. at p. 41:

Although we have much sympathy for petitioner's unhappy situation and are appalled at the harshness of this result in the instant case, the inflexible statute leaves no room for amelioration. It would seem that only remedial legislation can soften the impact of the rule of strict individual liability for income taxes on the many married women who are unknowingly subjected to its provisions by filing joint returns."

The judge who heard the case stated from the bench:

"The Court is constrained most reluctantly to decide this case from the bench against the taxpayer on the grounds of the Scudder case and on the grounds that he's left with no alterna-

tive, and in so doing I apologize or I express by sympathies to Mrs. Huelsman. I wish I could do otherwise but I can't, and I might say that if you can get me reversed on appeal, Mr. Burt, God bless you. I'd love to be reversed."

The Scudder case relied on by the Tax Court was subsequently reversed by this Court on grounds not applicable here, Scudder v. Commissioner of Internal Revenue, 405 F.2d 222 (1968), but excerpts from the opinion in Scudder have particular relevance. The Court, speaking through Judge O'Sullivan, said:

"We consider that the Tax Court was overly modest in measuring its own prerogatives and powers when it concluded that 'the inflexible statute leaves no room for amelioration.'

\*    \*    \*    \*    \*    \*

"The holding of the Tax Court, and other courts, that duress, trickery and fraud practiced upon a wife will, in certain factual contexts, prevent her from being subjected to liability of the kind here involved, derives not from language of relevant tax statutes but from the general rules of law and equity. We just cannot persuade ourselves that the executions of the joint returns here were not the product of conduct equivalent in wrong to the fraud, trickery and, indeed, the duress which the Tax Court appears to concede will insulate its victim from liabilities which would otherwise accrue. Running through the cases relied upon by the United States here is also the indication that there the wife had enjoyed the use of the embezzled funds through some spending of them for her benefit."

We are not prepared on this skimpy record to affirm the Tax Court's judgment when that court frankly admits it is "appalled at the harshness of this result." We are not convinced, as we were not convinced in Scudder, that the statute is so inflexible that an innocent wife who has been victimized by a dishonest husband must be subjected to an additional

appallingly harsh penalty by the United States Government. We are not prepared to admit that the Executive branch of our Government is so impotent or the Judiciary so ineffectual that relief may not be granted to such a victim.

The word "income" as used in the Internal Revenue Code has not always had an inflexible meaning. When Congress in 1954 enacted the Code under which this case falls, the Supreme Court was adhering firmly to the rule that embezzled funds were not to be considered as income for tax purposes. That rule was not changed until 1961. James v. United States, supra. How then can it be said that the definition of income under the 1954 Internal Revenue Code is so rigid that relief cannot be granted to this petitioner. If one were to probe for Congressional intent he would have to conclude Congress intended that, in line with the then holding of the Supreme Court, embezzled funds should not be treated as income even to the embezzler, much less to his spouse who was unaware of the embezzlement.

Courts very often hold in tax cases, at the insistence of the Government, that substance should prevail over form. The form of this case is that petitioner signed in good faith tax returns with her husband which technically made her liable for the tax on their joint income. The substance is that the money which her husband embezzled without her knowledge was not income to her in the usual sense of the word and, by the finding of the Tax Court, did not benefit her directly or indirectly. Just as the Government should pursue with diligence willful tax evaders so should it be diligent in protecting those who are innocent of wrongdoing.

It is argued by the Government that petitioner's liability is based on a contract and that by signing the contract she assumed a role somewhat related to a surety or guarantor; also that her liability is limited to the actual tax liability that would have been due had the income in question been reported on the original joint return.

The fallacy in this argument is that petitioner was fraudulently induced to sign a return which she obviously would not have signed had the embezzled money been included in it; and, the presence of actual fraud has historically been considered as grounds for relief to the aggrieved party. Moreover, if we correctly interpret the statute, a husband or wife who signs a joint return becomes liable as an individual debtor and not as surety or guarantor. We understand this to be the position of the Tax Court since it speaks of strict individual liability.

It is said by the Tax Court that it has no power to grant equitable relief and that only remedial legislation can soften the impact of the rule. Whatever may be the distinction between an equitable and a legal defense, the Tax Court apparently recognizes that an innocent spouse may avoid liability by proving duress or that the return was signed by mistake. Both of these are usually considered as equitable defenses. Relief from trickery and fraud could just as well rest on the same principle, especially when it is shown that the innocent spouse did not benefit, directly or indirectly, from the stolen funds. On the subject of remedial legislation, it may be assumed, we think, that Congress does not desire that the tax laws, as presently written, be interpreted so as to inflict an appallingly harsh result on an innocent person.

The case is remanded to the Tax Court for full development of the circumstances surrounding the preparation and signing of the returns in question and for disposition within the guidelines of this opinion.

McCREE, Circuit Judge (dissenting).

I, too, have compassion for petitioner, but I feel obliged by precedent and logic respectfully to dissent from the opinion of the court.

Although the Congress has not created exceptions to the joint and several liability of husbands and wives stipulated in 26 U.S.C. § 6013(d) (3), the courts have exonerated the co-signer of a joint

return if his signature was the product of mistake, duress, trickery or fraud.

Here, the Tax Court found that petitioner voluntarily signed the joint return for the years involved and, obedient to the teaching of Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), we are bound by that finding of fact unless it is clearly erroneous. Allen Industries, Inc. v. Commissioner of Internal Revenue, 414 F.2d 983 (Sixth Cir. Aug. 29, 1969). We should not hold that it is, because petitioner has admitted both by stipulation and by her sworn testimony that her signature was voluntary. I regard the fact that she derived no benefit, directly or indirectly, from her former husband's unreported income as an irrelevancy.

Nor do I regard the Supreme Court's holding in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), that embezzled funds are income to the wrongful taker as a fiction. The concept of income is one of art and the Congress has not seen fit to exempt the proceeds of embezzlement from taxation in the eight years since that decision. It follows, then, if embezzled funds are income to the embezzler, they are, by virtue of 26 U.S.C. § 6013(d) (3), income to his spouse since that statute provides that " * * * The tax shall be computed on the *aggregate income* and the liability with respect to the tax shall be joint and several." (Emphasis supplied.) If an item is income to one spouse, it is necessarily part of the aggregate income of both.

The majority opinion suggests that some form of equitable relief should be afforded. However, the jurisdiction of the Tax Court is purely statutory and it has no general equitable jurisdiction. Our court has only the function of review and it is not empowered to take any action prohibited to the Tax Court. Taylor v. Commissioner of Internal Revenue, 258 F.2d 89 (2d Cir. 1958).

I regard the reliance of the majority on our opinion in Scudder v. Commissioner of Internal Revenue, 405 F.2d 222 (6th Cir. 1968), aff'd on rehearing, 410 F.2d 686 (1969), as misplaced. The majority opinion there regarded that case as one involving "special facts" turning on the circumstances under which the culpable spouse obtained the unreported income. 410 F.2d at 688. And despite the wife's exoneration for taxes on the monies themselves because of the "special circumstances" under which they were obtained, the majority order on rehearing held that she was jointly liable for the tax on unreported profits realized by her husband on the monies unauthorizedly extracted from the partnership in which she had an interest. It is certainly arguable that she would not have signed the joint returns if she had known that such profits existed and were not reported. Nevertheless, the majority here states, without evidentiary support, that the taxpayer "obviously would not have signed (the return) had the embezzled money been included in it." That fact alone does not bring this case within *Scudder* which has been described by a tax law commentator as "a hard case, and the court was obviously stretching to find a way out for the wife." Mertens, Law of Federal Taxation, Vol. 8A § 47.48 (July, 1969 supplement).

To hold that a spouse must know of an understatement or non-reporting of income in order to be jointly and severally liable on a joint return would divest the pertinent section of the code of any meaning. It would ascribe to the Congress a vain act in providing for the vicarious liability of a person who would be liable, in the absence of Section 6013(d) (3), as a principal.

Finally, I cannot agree with the majority's procedural resolution. It does not appear that petitioner was precluded in any way from showing the circumstances surrounding the preparation and signing of the return. She was represented by counsel and entered into a stipulation of facts which she does not seek to set aside. She also testified under oath and offered no testimony to bring her case within any of the exceptions to the statutory rule. The burden was on

her to do so, Christman Co. v. Commissioner of Internal Revenue, 166 F.2d 1016 (6th Cir. 1948), and she should not be afforded a second opportunity in the absence of special circumstances which are not shown.

I would affirm the decision of Judge Tannenwald of the Tax Court.