*BETTY BELL WISSING (FORMERLY BETTY BELL HUELSMAN), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3343–67.   Filed June 29, 1970.

*Henry J. Burt, Jr.*, for the petitioner.
*Clarence E. Price* and *Dennis M. Feeley*, for the respondent.

---

*Caption amended by Court order dated August 11, 1970.

## OPINION

Initially, we note that the opinion above appears to suggest that funds embezzled by one spouse should not be regarded as income of the other spouse. See 416 F. 2d at 481. But, considering the opinion as a whole, and particularly the fact that the case was remanded to us for further action, we do not regard this to be the law of the case. Moreover, we are constrained to observe that section 6013(d)(3), I.R.C. 1954, provides that "if a joint return is made, the tax shall be

computed on *the aggregate income* and the liability with respect to the tax shall be joint and several." (Emphasis added.) Given the language of the statute and the legislative background to its enactment (see *Henry M .Rodney*, 53 T.C. 287, 321–322 (1969)), it seems clear that petitioner cannot escape liability merely because the unreported income was not hers. Thus, the only question involved in this remand is whether petitioner in fact made a joint return with Huelsman during each of the 3 years in issue.[2]

If the wife's signature to a joint return is not the product of the exercise of her own will, then the signature will not subject her to liability for taxes upon her husband's income. Thus, duress will invalidate a signature, since duress of sufficient degree can abnegate any free choice by the coerced wife. *Hazel Stanley*, 45 T.C. 555 (1966) ; *Irving S. Federbush*, 34 T.C. 740 (1960) ; *Estate of Merlin H. Aylesworth*, 24 T.C. 134 (1955). And if the signature was affixed to the return as the result of a mistake, the signature need not be recognized. *Payne* v. *United States*, 247 F. 2d 481 (C.A. 8, 1957). Similarly, if the wife signs the return not realizing what she is signing due to her husband's trickery or deception, the signature should not be regarded as the act of the wife. *Nadine I. Davenport*, 48 T.C. 921 (1967) ; *Louise M. Scudder*, 48 T.C. 36, 40 (1967), revd. 405 F. 2d 222 (C.A. 6, 1968). In situations of this type, the focal point of inquiry is whether the wife's act can be said to constitute the voluntary and knowing affixing of her signature, as a taxpayer, to a joint return. Courts in resolving this issue have naturally drawn upon the analysis and terminology developed under State law to deal with analogous problems. But the issue is one of Federal law, not of State law, and uniform Federal standards must control. *Hazel Stanley*, 45 T.C. at 562–563.

The opinion above states at one point "that petitioner was fraudulently induced to sign a return which she obviously would not have signed had the embezzled money been included in it." See 416 F. 2d at 481. This statement, standing alone, would appear to be dispositive of this case. However, if it is so treated, it would seem that the Court of Appeals would have directed judgment to be entered for the petitioner and the remand herein would have been unnecessary. Under these circumstances, and additionally because of the action by the Sixth Circuit in other cases involving the same issue,[3] we do not

---

[2] Petitioner has made no contention that the embezzled funds should not be considered as income nor has she attacked respondent's deficiency determination on any other ground.

[3] *Scudder* v. *Commissioner*, 405 F. 2d 222 (C.A. 6, 1968), reversing 48 T.C. 36 (1967), and *Sharwell* v. *Commissioner*, 419 F. 2d 1057 (C.A. 6, 1969), reversing a Memorandum Opinion of this Court. Compare *Estate of Ernest Clarke*, 54 T.C. 1149 (1970).

interpret this statement as an inexorable mandate. Compare *Asphalt Industries, Inc.* v. *Commissioner*, 411 F. 2d 13 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court.

We have implemented the remand and heard additional testimony looking toward the "full development of the circumstances surrounding the preparation and signing of the returns in question." See 416 F. 2d at 481. As our findings of fact show, Huelsman did not deceive petitioner as to what she signed; she signed the returns, knowing they were returns, and intending them to be joint returns with Huelsman. There was no fraud or mistake in the sense that she was deceived as to what she was signing. Concededly, she was subjected to the not inconsiderable moral pressure to sign that is the normal concomitant of the marital relationship. But we do not think that this moral pressure was so intense as to make the signature legally not her own act. On far stronger facts than those presented herein we have failed to find such duress. See *Estate of Merlin H. Aylesworth, supra.*

We have also found that Huelsman failed to tell petitioner about his embezzlements and succeeded in assuaging any doubts she may have had when she signed the 1965 return. He gave her the three returns to sign, rather than forging her signature, only because he knew that, on their face, they would give her no grounds for suspicion. Moreover, she would not have signed any of the returns if she thought that they were "dishonest."

Thus we arrive at the fundamental question in this case: Did Huelsman's nondisclosure constitute such fraud as to render petitioner's signature nugatory? In general, nondisclosure does not constitute fraud. But where there is a confidential relationship between the parties, there is a duty to disclose all material information, and failure to do so constitutes fraud. *Sellers* v. *Sellers*, 428 P. 2d 230 (Okla. 1967); *Farmers' State Bank of Newport* v. *Lamon*, 132 Wash. 369, 231 Pac. 952, 953–954 (1925); Prosser, Law of Torts 711–712 (3d ed. 1964); Restatement, Torts, sec. 551 (1938). Husband and wife are universally held to share such a relationship. *Erdman* v. *Erdman*, 127 Mont. 252, 261 P. 2d 367 (1953); *Hafner* v. *Hafner*, 237 Minn. 424, 54 N.W. 2d 854, 859 (1952).

In property and contract law, however, fraud in the inducement has much less drastic consequences than fraud in the execution. See Restatement, Contracts, secs. 475, 476. And we think this difference of treatment at State law reflects a real and fundamental difference between the two types of fraud.

Clearly, petitioner's knowledge of Huelsman's activities (albeit accompanied by a misconception as to its tax consequences) did not

prevent her from signing the 1965 return. Under such circumstances, we think that her statement that she would not have signed a "dishonest" return simply indicates that she did not want to be exposed to a charge of income tax fraud or other criminal involvement with respect to any return she signed.[4]

In emphasizing petitioner's knowledge at the time she signed the 1965 return and in giving it some effect in determining the effect of her signature on the returns for 1963 and 1964, we do not mean to suggest that we would reach a different result if that factor were not present. Rather, we think this case reflects a general situation where there is merely a failure on the part of a spouse to disclose to the other spouse items which in fact constituted income for tax purposes, even though such items were not so considered at the time the returns were filed. To hold that such nondisclosure rises to the level of fraud or trickery in the execution of the return, would, in our opinion, open a Pandora's box to avoidance of liability on joint returns. To be sure, the courts would not always have to accept the testimony of the victimized spouse as to his or her intent at the time of signing the return. Judges are constantly called upon to determine truth as against falsehood where the testimony relates to a purely subjective fact. But we do not think that we should deliberately open the door for the skillful liar, or to the skillful shuffling of assets among spouses, in an area where the statutory language is as clearly stated as it is in section 6013(d)(3) of the 1954 Code.

We would welcome a rule which would grant relief to a victimized spouse who has no knowledge of or reason to have knowledge of, and does not benefit from, unreported income, at least where that income is the fruit of a crime. But we regretfully see no way in which this Court can or should engraft such a "doing equity" rule on the language of section 6013(d)(3). We think that such a result should properly be accomplished by ameliorating legislation.[5] See 83 Harv. L. Rev. 1449, 1451–1452 (April 1970).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[4] The impact of these circumstances on the liability of petitioner for additions to tax for fraud need not concern us, since respondent has made no claim for such additions. Compare *Kathleen C. Vannaman,* 54 T.C. 1011 (1970) ; *Henry M. Rodney,* 53 T.C. 287 (1969), and particularly the opinion of Sterrett, J., at pp. 323–325.

[5] See H.R. 14945, 91st Cong., 1st Sess., introduced on Nov. 24, 1969. We also note that an element which Congress may deem important in any legislation is the extent to which a victimized spouse has received, by virtue of having filed a joint return, the benefit of a lower tax rate on his or her separate income. Cf. *Sharwell* v. *Commissioner,* 419 F. 2d 1057 (C.A. 6, 1969).