ANN J. ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 9420-72.
United States Tax Court
T.C. Memo 1975-104; 1975 Tax Ct. Memo LEXIS 268; 34 T.C.M. (CCH) 508; T.C.M. (RIA) 750104; April 16, 1975, Filed. Jeff D. Batts and T. Perry Jenkins, for the petitioner. Frank D. Armstrong, Jr., for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION. IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax for *269 the taxable years 1969 and 1970 in the amounts of $5,828.76 and $7,514.74, respectively. Respondent also asserted additions to the tax under section 6653(a)[1] of $291.44 for 1969 and $375.74 for 1970. The issues for decision are: (1) whether Ann J. Anderson (hereafter referred to as petitioner) qualifies as an innocent spouse under section 6013(e) so as to relieve her from payment of income taxes on amounts embezzled by her former husband, Robert Anderson (hereafter referred to as Anderson), in 1969 and 1970, and omitted from the joint returns filed by petitioner and Anderson for these years; and (2) if petitioner is not relieved of liability by virtue of section 6013(e), whether the additions to the tax under section 6653(a) are applicable. Anderson has admitted his liability for the tax resulting from embezzled proceeds and has entered into an agreement with the respondent for payment of the tax. Petitioner does not question the amount of the deficiency but asserts that as an innocent spouse under section 6013(e) no liability for the tax attaches to her. FINDINGS OF FACT Some of the facts *270 have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner was a resident of Tarboro, N.C., when she filed her petition in this proceeding. She and Anderson filed joint income tax returns for the year 1969 on April 14, 1970, and for the year 1970 on April 14, 1971, with the Southeast Service Center, Chamblee, Ga.
Petitioner was married to Anderson on June 13, 1953. The Andersons had three sons who in 1969 were 15, 11 and 9 years of age. Petitioner and Anderson were separated in February 1971 and divorced in June 1972. In January 1963 Anderson and Jack Shultz purchased Constantine Petroleum Company, Inc., located in Tarboro, N.C., from Nick and Randolph Constantine. Later, Shultz transferred his interest to W. G. Clark, Jr., who later sold it to Anderson. On February 28, 1969, Anderson sold the assets to Constantine Petroleum Corporation of Murfreesboro, North Carolina, Inc. (hereafter referred to as Constantine). After the sale Anderson was employed by Constantine as the office manager at Tarboro. On June 24, 1970, Anderson was discharged by his employer and remained unemployed until November *271 1970 when he secured employment with Dillon Supply Company of Raleigh, N.C.
In November 1970 Anderson was indicted for embezzling approximately $52,000 from Constantine. Anderson entered a plea of nolo contendere to the indictment in February 1971. He was sentenced to imprisonment for a period of not less than four nor more than five years, suspended on the condition that he pay a fine of $1,000 plus court costs and make restitution to his employer in the amount of $30,000. Despite extensive efforts on the part of Constantine and by the Commissioner, the embezzled funds have never been traced. On each of the joint returns for the years 1969 and 1970 there was omitted from gross income, and properly includable therein, income which is attributable to Anderson and which is in excess of 25 percent of the amount of gross income stated in the return. Anderson has entered into agreements with the Internal Revenue Service for the tax resulting from the embezzled funds to be assessed against him for the taxable years 1969 and 1970 and to be paid by him. Petitioner was not familiar with the business operations of Constantine. She never helped in the business by doing such things as preparing *272 checks, collecting accounts receivable, working on records, or typing. She never saw a business check book. Anderson never disclosed to petitioner the amount of profit generated by the business nor the amount of income he derived from the business. Petitioner visited Anderson's place of employment infrequently, and then only as a convenient place to cash checks. At the time Anderson sold the business petitioner was under the impression that a merger was taking place. Petitioner was aware that Anderson had borrowed $15,000 from petitioner's father when the business was originally purchased by Anderson in 1963. Anderson also borrowed money from petitioner's uncle and brother in amounts of $16,000 and $20,000, respectively. Petitioner was not aware of these two loans at the time they were made, but the record does not indicate when she later learned of their existence. Petitioner never loaned Anderson any money, but she did allow her personal savings accounts to be used as collateral for loans negotiated by Anderson in connection with his business. At one point Anderson did discuss with petitioner the need to purchase a tractor trailer for the business as he needed her signature on a *273 deed of trust to their house in order to secure financing on the tractor trailer. Petitioner did not know that Anderson had been discharged by his employer in June 1970 until nearly one month after the fact and she did not then know the reason for his discharge. Anderson telephoned petitioner on July 1, 1970, from out of town to inform her that the auditors were at the office and that he had gone to seek financial aid. During the next two weeks Anderson spent most of his time in Kentucky due to the illness of his father. From July 19 to July 24, 1970, both petitioner and Anderson were in Kentucky due to the death of Anderson's father. Anderson delayed informing petitioner of his discharge in hopes that something could be worked out with his employer. When petitioner confronted Anderson with her knowledge of his discharge, he offered no explanation. Petitioner first became aware of a possible indictment in the fall of 1970. At that time Anderson assured petitioner that the money remained in the business, or had been reinvested in the business, and petitioner received this same assurance from Anderson whenever she attempted to discuss the matter with him. Beginning in June 1970 the *274 relationship between petitioner and Anderson came under a heavy strain and communication between the two became extremely limited. Petitioner and Anderson attributed the strain on their relationship and resultant loss of communication to several factors: (1) Anderson's discharge in June 1970 and his subsequent unemployment, (2) the illness and death of Anderson's father in July 1970, (3) Anderson's indictment in November 1970, (4) the illness and death of petitioner's father in December 1970, and (5) Anderson's trial and conviction on the embezzlement charge in February 1971. Anderson was hospitalized twice in March 1971; each time as a result of an overdose of sleeping pills. During the years 1969 and 1970 petitioner was employed as a school teacher for the Tarboro City Schools. Petitioner's gross salary for 1969 was $7,076. Petitioner's take-home pay (after deductions for Federal tax, F.I.C.A., state income tax, and contributions to her retirement plan) for 1969 was $4,928.44. In 1969, when both petitioner and Anderson were employed, it was petitioner's practice to put a portion of her salary into savings and to retain the remainder to purchase items for the house, for the children, *275 and to take care of other personal needs. From January through April 1969, petitioner made deposits totaling $1,033.35 to a savings account in her name at the Edgecombe Bank & Trust Company of Tarboro. In May 1969 petitioner opened an additional savings account in her name at the North Carolina National Bank and deposited a total of $1,350 to that account during the period from May through December 1969. Petitioner and Anderson maintained a joint checking account at the Edgecombe Bank & Trust Company during 1969. This account was used to pay ordinary household and living expenses incurred by the Anderson family. Petitioner wrote checks on this account to cover expenses as they arose. Anderson made deposits to this account as funds were needed. Petitioner made at least two deposits out of her earnings to the joint checking account during 1969, totaling $585 to cover specific purchases of clothing and a refrigerator. Although petitioner wrote most of the checks drawn on the joint account, she never reconciled the bank statement and was never aware of the balance in the account. She relied on her husband to maintain a sufficient balance. Petitioner did not receive a cash allowance from *276 her husband nor did she have access to his personal checking account, which was used by Anderson to handle business expenses. Rather, all family expenses were paid from the joint checking account and from the portion of petitioner's earnings not deposited to savings. Anderson's gross salary for 1969 was $10,000. His take-home pay for 1969 (after deductions for Federal income tax, F.I.C.A., and state income tax) was $8,509.40. Pertinent financial data, comparing reported income, and expenses plus increase in bank account balances for the Andersons in 1969 appear below: Reported Gross Income:
$17,153.89
Expenses, Withholding, Savings:
Withholding - Ann
Federal Income Tax
$1,209.80
F.I.C.A.
339.67
State Income Tax
237.33
Retirement
360.76
Total
$2,147.56
Withholding - Robert
Federal Income Tax
$ 856.00
F.I.C.A.
480.00
State Income Tax
154.60
Total
1,490.60
Checks - Joint Account
9,631.62
Excess of Ann's take-home
pay over amounts de-
posited in savings and
joint checking accounts:
Take-home Pay
$4,928.44
Deposited
(2,968.35) Total
1,960.09
Increase in Savings
2,383.35
TOTAL EXPENSES, ETC.
17,613.22
Excess Over Reported Income $ (459.33)
*277 During the first five months of 1970 the family finances were handled in much the same way as in 1969. Anderson made deposits to the joint account and petitioner drew on that account to pay household expenses. In March 1970 petitioner opened a personal checking account against which only she could draw checks. Her intention in opening the account was to establish a more convenient way of paying for items she wanted covered by her own earnings--such as draperies, curtains and items that were personal to her. During this period she continued to make deposits to her savings account at the North Carolina National Bank. On June 8, 1970, petitioner discovered that unauthorized withdrawals had been made against her savings account at the Edgecombe Bank & Trust Company by Anderson totaling $1,100. She withdrew the balance in that account of $771.91 on June 29, 1970. At Anderson's request she deposited $500 of that amount to his personal checking account. The remainder she held for personal expenses. Beginning in July 1970 the activity in the joint account decreased substantially. Anderson was unemployed and discontinued making deposits. The family expenses were paid by checks drawn *278 on petitioner's personal checking account for the remainder of the year. Deposits to this account were made from petitioner's earnings. Financial data comparing reported income for 1970 with expenses and decrease in savings for the year appear below: Reported Gross Income:
$13,690.32
Expenses, Withholding, Savings:
Withholding - Ann
Federal Income Tax
$1,178.50
F.I.C.A.
366.09
State Income Tax
281.00
Retirement
396.59
Total
$2,222.18
Withholding - Robert
Federal Income Tax
$ 525.39
F.I.C.A.
277.58
State Income Tax
120.33
Total
923.30
Checks - Joint Account
5,567.48
Checks - Ann's personal
account
3,497.37
Excess of Ann's take-home
pay over amounts de-
posited in savings and
checking accounts:
Take-home Pay
$5,404.57
Deposited
(5,261.27)
Total
143.30
Amounts Withdrawn from
Savings
2,261.11
TOTAL EXPENSES, ETC.
$14,614.74
Net Decrease in Savings
992.57[2]
Total Amount Expended from
Current Income
13,622.17
Excess of Reported Income
over Expenditures from
Current Income
$ 68.15
*279 During 1969 and 1970 the Andersons lived in a home valued at between $18,000 and $20,000, which they had originally purchased for $10,000. The home was similar to that of others living in the community with comparable income. There were no improvements made to the home during 1969 or 1970. Originally the home was owned by petitioner and Anderson as tenants by the entireties. At petitioner's request Anderson transferred his interest in the home to petitioner on July 16, 1970, subject to the mortgage indebtedness thereon. Petitioner requested the transfer out of fear that Anderson's former employer might try to take possession of the house. On August 17, 1970, the house was refinanced for the purpose of reducing the monthly payments. During 1969 and 1970 the Andersons did not travel extensively, exchange valuable gifts, or entertain lavishly. They owned a 1967 Chevrolet station wagon. The Federal income tax returns for 1969 and 1970 were prepared by Robert Medley. Anderson delivered the W-2 Forms to Mr. Medley, along with a listing of deductible expenses. Using this information Medley completed the returns and returned them to Anderson to be signed by Anderson and petitioner. Petitioner *280 did not review the returns before signing. Petitioner was not aware that embezzled funds constituted taxable income when she signed the returns. OPINION This case presents two issues for determination. The first is whether petitioner is relieved of liability for the deficiencies by virtue of the so-called "innocent spouse" provisions of section 6013 (e). Secondly, if petitioner does not fall within section 6013 (e), we must decide whether the additions to the tax under section 6653 (a) may be asserted against her. Congress added section 6013 (e) to the Code in 1971, Pub. L. 91-679 (Jan. 12, 1971), and made it applicable to all open years. Section 3, Pub. L. 91-679, supra.Section 6013 (e) provides in part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent *281 of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. The burden of proving each of the above elements is on petitioner. Raymond H. Adams, 60 T.C. 300 (1973); JeromeJ. Sonnenborn,57 T.C. 373 (1971). The parties have stipulated that on each of the joint returns for the years 1969 and 1970 there was omitted from gross income, and properly includable therein, income attributable to Robert Anderson which was in excess of 25 percent of the amount of gross income stated *282 in the return. Petitioner contends that she falls within section 6013 (e) (1) (B) and (C) with respect to each of the years in question and should accordingly be relieved of liability for the deficiencies. 1969
In determining whether petitioner actually knew of the omission we must necessarily rely in large part on her own testimony. Both petitioner and Anderson testified that petitioner was not aware of the embezzlement when she signed the 1969 return. The only indication to the contrary is the testimony of respondent's agent to the effect that Anderson told him in December 1971 or January 1972 that petitioner knew of the embezzlement and should be held jointly liable for the tax due. We regard this as being merely Anderson's conclusion as to what petitioner knew in December 1971. [3] Considering the direct testimony on this point by both petitioner and Anderson, we believe petitioner has established that she did not have actual knowledge of the omission when she signed the 1969 return. Nor do we believe that petitioner had reason to know of the omission when she signed the 1969 return. The Andersons' *283 standard of living during 1969 was in line with reported income for that year and was comparable to that of other families in the community with similar incomes. Family financial matters were not discussed, and during this perior petitioner placed her trust and confidence in her husband to attend to these matters. Funds were not made available to petitioner beyond the amount needed to run the household. On the contrary, petitioner used part of her own earnings to purchase clothing for herself and for the children and for various household items. The Andersons expended only modest amounts on travel, entertainment and gifts. Their home was modest, heavily financed, and no improvements were made to it during the year. Petitioner drove a 1967 Chevrolet. The financial data submitted to the Court indicates that for 1969 the Andersons expended approximately $500 more than was reported on the joint return for that year. We do not believe, even assuming that petitioner was aware that the family was overspending its reported income, that such excess would have given petitioner reason to know of the omission. Patricia E. Mysse,57 T.C. 680 (1972), acq. 1972-2 C.B. 2. *284 As we stated in Mysse,supra at 699:
To be entitled to the benefits of section 6013 (e) a spouse is not required to have perfect knowledge of the family's finances; nor is she required to see that the family maintains a balanced budget; however, she cannot close her eyes to unusual or lavish expenditures. * * * At the time petitioner signed the 1969 return, in April 1970, her husband's embezzlement had not yet been discovered by his employer or by the authorities. She testified that she was not aware of any difficulty between her husband and his employer until early July 1970, and that she was not aware of the embezzlement charge until sometime later in July 1970. There is, therefore, no basis upon which we can hold that these charges put petitioner on notice of the omission in April 1970. Petitioner has established through her testimony, through the testimony of Anderson, and through the financial data submitted at trial that she did not know or have reason to know of the omission when she signed the 1969 return. Finally, taking into account whether or not petitioner significantly *285 benefited from the omission, we must decide whether, under all the circumstances, it would be inequitable to hold her liable for the deficiency attributable to the omission. The Senate Committee report accompanying the public law which added section 6013 (e) indicates that the term "benefit" does not include ordinary support of the innocent spouse, but that it does include unusual support or transfers of property even if the benefit is received several years after the omitted item should have been included in income, S. Rept. No. 91-1537, 91st Cong., 2d Sess. (1970), p. 3, 1971-1 C.B. 607, 608. Respondent has adopted this same view regarding the meaning of "benefit" in his regulations. Section 1.6013-5(b). In determining whether petitioner benefited significantly we must, therefore, ascertain whether she received any unusual support and whether there were any unusual transfers of property to her. Anderson testified that the embezzled funds were: not deposited to any of the bank accounts to which petitioner had access; not used to pay bills incurred by petitioner; not used to buy property in petitioner's name; and not used to buy insurance on which petitioner was *286 the beneficiary. Even if we do not accept Anderson's testimony, we do not find that petitioner at any time had access to funds provided by Anderson which do not fall within the category of normal support. During 1969 petitioner contributed part of her own earnings toward the family's support and for much of 1970 petitioner's earnings were the sole means of family support. Further, we find no unusual transfers of property to the petitioner from which she derived significant benefit. She received no lavish gifts. Mysse,supra.The transfer of Anderson's interest in the house, while perhaps unusual, did not confer a significant benefit upon petitioner. The house was subject to two mortgages and the total indebtedness exceeded the value of the home. The transfers of the household furniture and the 1967 Chevrolet, pursuant to the separation agreement, constitute no more than ordinary support and must be weighed against the factors of divorce and the absence of alimony payable to petitioner. Jennie Allen,61 T.C. 125 (1973). Neither the Commissioner nor Anderson's employer were able to trace the funds. There is, therefore, apparently no accumulation from *287 which petitioner can ever benefit. Mysse,supra at 699. In light of all the evidence, we find that petitioner has not benefited significantly from the items of omitted income for 1969 and that it would be inequitable to hold her liable for the tax. Thus, petitioner meets all the requirements of section 6013 (e) for the year 1969 and is entitled to the relief from liability provided thereunder. As we have found that petitioner has no liability with respect to the deficiency for 1969, we dismiss the question of her liability under section 6653 (a) for any additions to the tax for 1969. 1970
As to whether petitioner actually knew of the omission for 1970, we must again rely in large part on her own testimony. We have found her testimony credible and conclude that when petitioner signed the joint return for 1970 she had no actual knowledge of the omission. The evidence as to whether petitioner had reason to know of the omission for the year 1970 differs, however, from the evidence presented for the year 1969. Beginning in July 1970 petitioner knew that there was a question as to whether her husband had embezzled money from his employer. Although petitioner insists that *288 she was too involved with other personal tragedies to really comprehend the nature of the charge against her husband, it is clear she comprehended enough to become fearful that her husband's employer might try to take possession of their house. Furthermore, prior to the time that petitioner signed the 1970 return on April 14, 1971, her husband had been indicted, tried, and sentenced on a plea of nolo contendere for embezzling funds from his employer. Respondent contends that these events gave petitioner reason to know of the omission. We agree with respondent. Petitioner asserts that an awareness of her husband's indictment and subsequent conviction did not give her reason to know of the omission and refers us to a decision by the Sixth Circuit in support of that proposition, Wissing v. Commissioner,441 F. 2d 533 (C.A. 6, 1971), vacating 54 T.C. 1428 (1970). [4] The holding in that case is not, however, dispositive of this case. The issue of whether the wife had reason to know of the omission, by virtue of her husband's indictment and conviction for embezzlement, never reached the Court. [5] That is, however, the precise issue we must resolve here. *289 *290 Although we have determined, in several cases, the applicability of section 6013 (e) where one spouse embezzled funds and omitted the income therefrom on a joint return, see Howard B. Quinn,62 T.C. 223 (1974), on appeal (C.A. 7, Aug. 19, 1974); Blaine S. Fox,61 T.C. 704 (1974), acq. I.R.B. 1974-46, 5; Patricia E. Mysse,supra, we have never needed to determine whether the indictment and conviction of one spouse gave the other spouse reason to know of the omission. The embezzlement in Mysse,supra, was not discovered until after the husband's death and the wife asserted the protection of section 6013 (e) only with respect to returns signed prior to her husband's death. In Fox, supra, the wife signed a joint return, knowing that her husband had been indicted for embezzlement, but put forth no evidence to support her plea for relief under section 6013 (e). We were, thereby, forced to hold against her on her failure to attempt to overcome the presumption in favor of the Commissioner. We determined in Quinn,supra, that the wife had actual knowledge of the omission and did not, therefore, consider whether *291 she had "reason to know" of the omission. Petitioner's assertion that she was convinced by Anderson that the money remained in the business, or had been reinvested in the business, does not convince us that she had no reason to know of the omission. Anderson never denied taking the money but merely assured petitioner that the money remained in or had been reinvested in the business. [6] While petitioner may have been convinced by this explanation originally, we cannot accept her continued reliance on such a sketchy explanation in light of her husband's conviction. It is now well settled that embezzled funds must be included in gross income. James v. United States,366 U.S. 213 (1961). Petitioner was not aware that embezzled funds constituted taxable income. A misconception of the legal consequences of the receipt of money does not, *292 however, relieve a taxpayer of liability for the tax. Howard B. Quinn,supra;Robert L. McCoy,57 T.C. 732 (1972). Bearing in mind that Congress did not intend to absolve taxpayers of joint and several liability except as specifically provided in section 6013 (e), we must strictly interpret the requirements found therein. As we stated in Sonnenborn,supra at 380-381: It is important that these provisions [6013 (e)] be kept in proper perspective. The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns. This circumstance gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return. * * *293 * [It] must be kept in mind that Congress still regards joint and several liability as an important adjunct to the privilege of filing joint returns, and that if there is to be any relaxation of that rule the taxpayer must comply with the carefully detailed conditions set forth in section 6013 (e). * * * In order to establish that she had no reason to know of the omission, petitioner must show that there were no facts within her knowledge from which a reasonably prudent taxpayer would have known of the omission. Sanders v. Commissioner, F. 2d (C.A. 5, 1975), affirming 369 F. Supp. 160 (1973). We recognize, as did the Fifth Circuit in Sanders,supra, that we must consider petitioner's subjective condition when assessing the reasonableness of her actions. Petitioner experienced a series of personal tragedies during 1970 and early 1971 and we are aware of the effect these experiences must have had on her state of mind. Giving due consideration to these subjective factors, we nevertheless conclude that Anderson's indictment and conviction for embezzlement were facts within petitioner's knowledge from which a reasonably prudent taxpayer under *294 similar circumstances would have known of the omission. Applying this standard we find that petitioner had reason to know of the omission for 1970 and is, therefore, ineligible for relief from liability under section 6013(e). We must further decide whether the addition to the tax under section 6653(a) for the year 1970 is appropriate. Respondent's determination that the addition is applicable is presumptively correct; petitioner has the burden of establishing that the understatement was not due to her negligence or intentional disregard of rules and regulations. Joseph Marcello, Jr.,43 T.C. 168 (1964), affd. 380 F. 2d 499 (C.A. 5, 1967). We have determined that petitioner was aware of facts from which a reasonably prudent taxpayer would have known of the omission. Petitioner has failed to establish that signing the return, under these circumstances, was an exercise of due care. We, therefore, affirm respondent's determination that the negligence penalty under section 6653(a) is applicable for the year 1970. Decision will be entered under Rule 155. *295 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The decrease in the amount of savings on hand at the beginning of 1970 from that at the end of 1970 was $992.57. As this amount was not spent out of 1970 income, it has been subtracted from total 1970 expenses to reflect the amount expended from current income.↩
3. Petitioner admits that she knew of the embezzlement in December 1971.↩
4. This case was heard on remand from Huelsman v. Commissioner,416 F. 2d 477↩ (C.A. 6, 1969), remanding a Memorandum Opinion of this Court. 5. In Wissing the wife signed joint returns with her husband for the years 1963, 1964, and 1965. In May 1965 the husband was indicted for obtaining money under false pretenses and in November 1965 he was sentenced upon a plea of guilty. The Commissioner asserted deficiencies against the wife under the joint and several liability provisions of section 6013 (d) (3) with respect to omissions of income attributable to her husband's embezzlement. The case came before us prior to the enactment of section 6013 (e) and we found that, even though the wife had no actual knowledge of and received no benefit from the omitted funds, she was nevertheless liable for the tax asserted in the deficiencies. Betty B. Huelsman,T.C. Memo. 1968-95. The Court of Appeals then remanded the case to us for further consideration of the circumstances surrounding the preparation and signing of the returns. Huelsman v. Commissioner,supra.On reconsideration we again determined that the wife was liable for the tax. Betty Bell Wissing,54 T.C. 1428 (1970). Subsequent to that decision Congress added section 6013 (e)↩ to the Code, Publ L. 71-679. On the basis of this new provision, Mrs. Wissing took an appeal to the Sixth Circuit. At that point the Commissioner conceded that Mrs. Wissing had no actual knowledge, nor any reason to know, of the omission when she signed the returns. The only issue taken up by the Commissioner was whether there had been a 25 percent omission for one of the years involved.
6. This explanation is consistent with Anderson's statement to respondent's agent that the funds had been used to pay off old business debts.↩